[No. 26697.  Department One.  January 3, 1938.]

RICHARD CLEVELAND, *a Minor, by Fred I. Cleveland, his Guardian ad Litem, et al., Respondents,* v. GRAYS HARBOR DAIRY PRODUCTS, INC., *et al., Appellants.*[1]

*Ralph S. Pierce* and *Edwin J. Cummins,* for appellants.

*Ray W. De Kraay* and *J. E. Stewart,* for respondents.

[1]Reported in 74 P. (2d) 909.

HOLCOMB, J.—This is an action for personal injuries alleged to have been sustained by Richard Cleveland, a boy about three years old, on December 10, 1933, at Aberdeen.

The case was tried to the court without a jury, and judgment rendered allowing the boy nine thousand dollars and his parents two hundred dollars for money expended.

On February 6, 1935, an examination at Bellingham revealed that the boy had diabetes. His recovery was based upon the theory that the diabetes resulted from the accident of December 10, 1933.

Among others, the trial court made the following material findings, all of which are sustained by competent, substantiating testimony:

"That at said time the plaintiff Richard Cleveland was in a paved alley at the back of the dairy plant owned and operated by the defendant Grays Harbor Dairy Products, Inc. and situated in the said city of Aberdeen; that the said Curt Reinholds drove the delivery truck of the said defendant into said alley and saw the plaintiff Richard Cleveland standing in said alley near the rear end of the said dairy plant; that the said Curt Reinholds turned the said delivery truck to the side of the alley opposite the said dairy plant and started to back the same into a rear door of the said plant; that the plaintiff Richard Cleveland ran in the way of the backing truck and was struck on the back of his head or neck near the base of his skull and knocked down.

"That as a result of the said blow the said plaintiff Richard Cleveland was stunned and dazed and remained in a dazed condition during the rest of the day; that for some three weeks thereafter he appeared listless and sat around the house instead of playing as usual; that after about three weeks had expired he again appeared fairly normal.

"That some two months after the said plaintiff Richard Cleveland received the said blow from the backing truck he became afflicted with multiple boils

which continued all during the summer of 1934; that in the fall of 1934 sores appeared on his head which persisted until some time in March, 1935; that on the 6th day of February, 1935, physicians diagnosed his disorder as diabetes; that said plaintiff was at said time in truth and in fact afflicted with diabetes and had been so afflicted for some time prior to the said 6th day of February, 1935; that the said plaintiff is still in a diabetic condition; that the said disease is incurable and the said plaintiff will permanently suffer therefrom.

"That the cause of the said disorder to the plaintiff Richard Cleveland was the blow which he received on the back of his head or neck by the backing truck of the defendant Grays Harbor Dairy Products, Inc. on the 10th day of December, 1933.

"That the said injury to the plaintiff Richard Cleveland occurred as a result of negligence on the part of the said Curt Reinholds, the operator of the said truck; that the said Curt Reinholds was negligent in not keeping a proper lookout for the said child; that he knew said child was in the alley and could have looked out for his safety and prevented said injury; that had he looked to his left he could have seen the child running to the rear of his truck; that if his view was so obstructed that he could not see, he could have called upon another employee of the said Grays Harbor Dairy Products Inc., who was standing in the door of the dairy plant towards which he was backing his truck, to determine where the boy was. That the said Curt Reinholds was guilty of negligence of a rather high degree in backing against the boy under the circumstances surrounding this accident; that the plaintiffs were not guilty of contributory negligence.

"That as a result of the said injury the plaintiff Richard Cleveland has been damaged in the sum of $9,000.

"That the plaintiffs Fred I. Cleveland and Dolores Cleveland have been compelled to expend the sum of $200 for medicines for their said son Richard Cleveland on account of said injury.

"That prior to the said injury the plaintiff Richard Cleveland had always been in excellent health; that

he had never had any illness or suffered from any disease of any kind; that he had never before, nor has he since, met with any accident resulting in his injury; that neither of the child's parents, grand-parents nor great grand-parents ever suffered from diabetes."

Upon these findings, the court concluded and awarded judgment for the amounts so found.

It is not disputed that, at the time and place in question, Curt Reinholds was in the employ of appellant Grays Harbor Dairy Products, Inc., and was in the course of his employment for its benefit.

The errors assigned by appellants are that the court erred in refusing to sustain the challenge to the sufficiency of the evidence; in finding that the driver was negligent; in finding that the diabetes was proximately caused by the negligence of the driver; in rendering judgment for respondent; and that the finding of the trial court on damages was excessive.

The assignments, except the last, are argued under two heads: That appellants are not liable for the injury, and that the injury did not result in the diabetes subsequently discovered.

On the question of the negligence of appellants, we are convinced, as the trial judge was, that the driver of the truck was guilty of negligence of a rather high degree in running against the boy under the circumstances surrounding the accident, and that respondent was not guilty of contributory negligence. A child of that age could not be guilty of negligence.

The traffic ordinance of Aberdeen was alleged and proven, a part of which prescribes:

"The operator of a vehicle shall not back the same unless such movement can be made in safety."

" "The law does not forbid the backing of an automobile upon the streets or highways, and to do so does not constitute negligence, but the driver of an automobile must exercise ordinary care in backing his ma-

chine, so as not to injure others by the operation, and this duty requires that he adopt sufficient means to ascertain whether others are in the vicinity who may be injured. . . . and he must not only look backwards when he commences his operation, but he must continue to look backward in order that he may not collide with or injure those lawfully using such street or highway.'" *Jellum v. Grays Harbor Fuel Co.,* 160 Wash. 585, 295 Pac. 939.

5 Am. Jur. 680, states:

§ 330. "One precaution that must be taken before starting to back is that of looking to see that the way is clear. The driver must continue to look while he is in the act of backing."

§ 331. "Where the driver is backing in a narrow street where other automobiles are parked and children are playing, it is his duty to sound his horn repeatedly when backing."

"The law does not forbid the backing of an automobile upon the streets or highways, and to do so does not constitute negligence, but the driver of an automobile must exercise ordinary care in backing his machine, so as not to injure others by the operation, and this duty requires that he adopt sufficient means to ascertain whether others are in the vicinity who may be injured. It is his positive duty to look backwards for approaching vehicles and to give them timely warning of his intention to back, when a reasonable necessity for it exists; and he must not only look backward when he commences his operation, but he must continue to look backward in order that he may not collide with or injure those lawfully using such street or highway." 2 Berry on Automobiles (7th ed.), § 2.326.

To the same effect is *Taulborg v. Andresen,* 119 Neb. 273, 228 N. W. 528, 67 A. L. R. 642, with notes thereto beginning on page 647. Cf. *Sheldon v. James,* 175 Cal. 474, 166 Pac. 8, 2 A. L. R. 1493.

It may be positively said that the above texts and cases state the general rule, and there are, apparently, none to the contrary.

■   Two physicians testified as expert witnesses for respondents and three for appellants. One of the experts for respondents testified that every authority he had ever read acknowledged trauma as one cause of diabetes. This expert, in part, testified:

"If it was diagnosed on February 6, 1935, as acute diabetes it must have appeared sometime before that and reached the climax and was brought out at that time by an examination. It was probably a number of months before that—could have been any length of time. Boils are a comparatively common symptom in the early stages of diabetes mellitus, which this boy is afflicted with. They would indicate a form of sepsis. The same with the sores on the scalp. If the boy was healthy, had had no diseases or infections requiring a physician, and in December, 1933, received an injury, probably on the back of the head, was dazed and somewhat stunned and did not appear normal for 2 or 3 weeks; in the spring became afflicted with boils which continued all summer and then he became sick, and sores developed in the fall, and on February 5, his condition was diagnosed as acute diabetes, and there was no inheritance of diabetes, then in my opinion the diabetes was the result of trauma. My opinion is based upon the fact that family history back to great grandparents reveals no diabetes; the fact that personal history reveals no previous accident or injury and no prior illness. The only conclusion must be that the boy developed diabetes months after the injury and must be due to the trauma sustained at the time of the accident, trauma being one cause of diabetes."

The other expert for respondents testified that, in his opinion, the injury to the central nervous system caused the diabetes from which the child suffered; that he also believed that the child had diabetes when he became afflicted with boils and skin disease in the summer of 1934. Both of these experts testified that boils are often the first symptom of diabetes. Both of these physicians had made a thorough examination

of the child, and both unhesitatingly gave as their opinion that the injury the child received at the time of the accident caused its diabetic condition.

The trial judge saw and observed the expert witnesses for both respondents and appellants and was better able to weigh their competency and credibility than are we. One of appellants' experts simply testified that, in his opinion, diabetes is always hereditary. The trial judge considered the weight of the opinion evidence was contrary to the experts for appellants, with which we agree.

On the question of whether the injury caused the diabetic condition, there is a paucity of cases. The only ones which have been found sustaining that proposition are *Georgia Casualty Co. v. Little,* 281 S. W. (Tex. Civ. App.) 1092, and *Texas Indemnity Ins. Co. v. James,* 297 S. W. (Tex. Civ. App.) 254.

Appellants rely largely upon cases from this and other courts to the effect that the law will not permit verdicts to rest on conjecture and speculation. That, however, is not true of this case, as here two expert witnesses testified that trauma would cause diabetes. In this case, the hereditary conditions were eliminated. One of the medical authorities greatly relied upon by appellants, Elliott P. Joslin, with the cooperation of Howard F. Root and Alexander Marble, which authority was not called to the attention of the trial court, in part says:

"II. Trauma practically never the primary cause of diabetes: I agree with von Noorden, Umber and Labbe, that trauma cannot be the primary cause of diabetes, *except under extraordinary conditions* because an injury to the pancreas which could cause diabetes would be so destructive that it is almost inconceivable that it could be compatible with life. . . .

"To produce diabetes, trauma must interfere with the secretion of the islands of Langehans of the pan-

creas, but that it can do this except by actual physical injury to the pancreas, *is not known. Trauma, physical or psychic, can delay the emptying of the stomach and can prevent the secretion of gastric juice. . . .*" (Italics ours.)

That authority admits the possibility of diabetes being induced by an injury.

■ Upon the question of the amount of awards to respondents, the trial court very succinctly summed up the evidence and the prospects as to what would be requisite to even keep the boy alive for as long as fifteen years, when he might begin to earn something for his own maintenance, which we consider very reasonable. Therefore, we cannot disturb the findings of the trial court upon the claim that the damages allowed were excessive.

The judgment is affirmed.

STEINERT, C. J., MAIN, BLAKE, and SIMPSON, JJ., concur.