[No. 31717.   Department One.   September 5, 1951.]

WILLIAM B. LEWIS, *Respondent,* v. OTTO C. JENSEN
*et al., Appellants.*[1]

[1]Reported in 235 P. (2d) 312.

*Garland & Garland* and *Gerard N. Fisher,* for appellants.

*Lycette, Diamond & Sylvester* and *Earle W. Zinn,* for respondent.

BEALS, J.—During the month of May, 1949, plaintiff, William B. Lewis, purchased from the defendants, Otto C. Jensen and Tilford F. McCown, copartners doing business at the Kitsap county airport as Aero-Marine Company, a 1948 Cessna 140 airplane. The defendants, as copartners, were engaged in the business of selling, repairing, and checking airplanes. At the time of the sale of the plane to plaintiff, it was agreed that defendants would service the plane after it had flown approximately twenty-five hours.

June 1, 1949, Lloyd Burfiend, plaintiff's brother-in-law, flew the plane to the airport for the purpose of purchasing gasoline. While at the airport, defendant McCown called Burfiend's attention to the fact that the plane should be inspected, it being then agreed that the plane would be left overnight at the airport for the purpose of servicing and checking. Burfiend testified that, at that time, he told Mc-Cown to put the plane away and remove the keys. McCown then drove Burfiend to plaintiff's home, the latter testifying that he also told McCown to care for the plane and remove the keys. The plane was placed in the airport hangar, but the key was left in the ignition. No watchman was employed at the airport, and the hangar was left open.

Late that night, about 1:30 a.m., John W. Driver and Francis Berg, who were then intoxicated, entered the hangar, took possession of the plane, and proceeded to fly it. After a short time, the plane crashed, with the result that both Driver and Berg were killed, and the plane totally destroyed.

July 29, 1950, plaintiff filed his amended complaint in the action, alleging the foregoing facts and that the damage to the plane was the result of defendants' negligence in failing to remove the ignition keys from the plane and failing to have the plane guarded. Plaintiff alleged that the airplane was reasonably worth twenty-five hundred dollars and that

it was completely destroyed and asked judgment for that amount.

By their answer, the defendants admitted that they were engaged in business as alleged in the amended complaint, but denied the other allegations thereof and pleaded affirmatively that plaintiff's agent, Burfiend, parked the plane in a parking place provided for airplanes, instructing defendant McCown to give the plane a routine twenty-five-hour check; that the plane was left at the airport with the key in the ignition, as was the custom with all planes; that no instructions were given for the removal of the key; and that the leaving of the key in the ignition did not contribute to the stealing of the plane, in that the persons who stole it were acquainted with the mechanism of planes and could have started the plane had the key not been in the ignition. Defendants also pleaded that the plane was cared for in all respects according to the custom of caring for planes at that airport.

The action was tried to the court, sitting without a jury, and resulted in the entry of findings of fact and conclusions of law in favor of the plaintiff, followed by a judgment in plaintiff's favor and against the defendants for the sum of twenty-three hundred fifty dollars, together with costs.

From this judgment, defendants have appealed, making the following assignment of errors:

"(1) The Court erred in finding the Appellants' failure to remove the ignition key from the airplane was the proximate cause of the damage.

"(2) The Court erred in not determining if the damages recoverable for the breach of the contract were such as might reasonably be supposed to have entered the contract.

"(3) The Court erred in refusing to let the Respondent testify to the reason he asked the Appellant to take the keys from the airplane."

It should be noted at the outset that Wilbur R. Brown, called as a witness by appellants, testified that he was a qualified commercial pilot and flight instructor; that in the latter capacity he had several students, including one John W. Driver, who had been taking lessons preparatory to fly-

ing planes. The witness testified that Driver had received instruction in flying all of the planes owned by appellants, including the plane appellants thereafter sold to respondent.

Appellant McCown testified that appellants had used the plane in question in their flying instruction program, and that Driver had flown the plane and "had taken instruction on it."

The trial court made comprehensive findings of fact, finding that appellants "were engaged in the business of selling, repairing, checking and performing mechanical work upon airplanes"; that respondent had purchased the plane from appellants; that at about 7:00 p.m., June 1, 1949, the witness Burfiend, on respondent's behalf, delivered the airplane in question to appellants at their place of business at the Kitsap county airport for the purpose of having appellants "perform a routine check and service" of the plane, which was delivered to appellant McCown; that "at the time of receiving said airplane the defendants' said agent and employee [appellant McCown] was given specific oral instructions to put said airplane away in the defendants' hangar and to remove the ignition keys from said plane"; that, after receiving the plane, appellants placed it in their hangar, but left the doors to the hangar open and failed to remove the ignition keys from the plane; and that no guard or watchman was on duty. The court's findings Nos. 5, 6, and 7 read as follows:

"(5) That at or about the hour of 1:40 A.M. on the morning of June 2nd, 1949, two intoxicated persons, to-wit: John W. Driver and Francis Berg, entered the defendants' said airplane hangar and removed the plaintiff's said airplane from said hangar; that said persons thereupon took said airplane out upon the field and after flying the same for a short time, crashed the plane and caused the same to be totally and completely destroyed.

"(6) That the said Driver and Berg had been drinking from about noon of June 1, 1949 until the taking of this plane, which occurred about 1:40 o'clock A.M. on June 2, 1949 and were considerably under the influence of liquor at the time they took the plane. That the said Driver and Berg had no

authority or permission or right to take said aircraft or fly it.

"(7) That the said John W. Driver was familiar with airplanes and although it is quite probable that had he been sober he could have started the airplane by manipulating the wires leading to the ignition lock, even though the keys had been removed, yet it would be pure speculation to say that in the condition Driver was he could have been able to have started the plane had the key not been in it."

The court further found that, at the time of the destruction of the plane, its reasonable market value was twenty-three hundred fifty dollars, and that, after the crash, the plane had no value and was a complete loss.

The court concluded that respondent was entitled to judgment against appellants individually and as copartners in the amount of twenty-three hundred fifty dollars, together with costs. The court then entered judgment in respondent's favor in accordance with the conclusions of law.

Appellants moved for a new trial, and, after denial of their motion, appealed to this court.

The trial court's finding that appellant McCown was instructed by Burfiend to put the airplane in the hangar and to remove the ignition keys from the plane is amply supported by the evidence. As both Driver and Berg were killed, and as no one saw them take possession of the plane, the record contains no evidence concerning the circumstances under which they did take the plane and start their disastrous flight.

Appellants argue that, as Driver knew how to start a plane without the use of an ignition key, he could easily have started the plane had the key not been available. It is, however, apparent that the presence of the key in its appropriate position in the ignition lock would offer an invitation, or at least a suggestion (especially to an intoxicated man, as was Driver), to enter the plane and place it in motion. The evidence clearly shows that Driver was intoxicated and the court's finding that "it would be pure speculation to say that in the condition Driver was he could have

been able to have started the plane had the key not been in it," is supported by the evidence.

■ Appellants' argument that an experienced pilot could, without any particular difficulty, start the plane without using the ignition key, is not convincing, as Driver was intoxicated and the court's finding above referred to is amply supported by the record.

A witness called by respondent testified that he met Driver and Berg about noon, prior to the accident; that they and the witness drank considerable beer and whiskey; that, not long after midnight, when "everybody had had plenty to drink" (the three men being then at Allyn), they entered an automobile; and that the witness went to sleep on the rear seat and knew nothing more until he was removed from the car after the accident. Asked if Driver and Berg had been drinking steadily since noon, he answered: "Well, I guess we had." In answer to the question, "Do you think they were in any condition to drive the automobile when you left Allyn?" he answered: "I don't know. I don't think that they were. I don't know. . . . I admit we were drinking heavy, but I don't think, frankly, Berg had as much to drink as Johnny Driver and myself." The witness testified that he knew nothing concerning the starting of the airplane by Driver and Berg.

The broken key of the airplane was offered in evidence by respondent and was admitted.

A deputy sheriff, called as a witness by respondent, testified that he was called to the scene of the accident, saw Driver's body, and found a partially consumed bottle of beer in his pocket. He also testified that he found in the automobile "an empty fifth of whisky."

■ Appellants' first assignment of error raises the question of proximate cause. Respondent's cause of action was based upon a special contract. The trial court made no finding of proximate cause, stating only that it was uncertain whether or not Driver, in his drunken condition, could have started the plane had the key not been left in the ignition.

In 5 Williston on Contracts (Rev. ed.) 3774, § 1344, re-

ferring to "proximate and natural consequences," appears the following:

"The law of torts and of contracts differ in this respect. For a tort the defendant becomes liable for all proximate consequences, while for breach of contract he is liable only for consequences which were reasonably foreseeable at the time when it was entered into, as probable if the contract were broken. The consequences may have been foreseeable because they would occur in the natural course of events, or because, though unusual, the defendant knew special facts making them probable. For all such consequences the defendant is liable whether they were actually foreseen or not, or whether even the criminal act of a third person intervenes."

In *Firestone Tire & Rubber Co. v. City Transfer & Storage Co.*, 115 Kan. 737, 224 Pac. 1117, the defendant, as bailee, contracted to store goods in a locked compartment, and violated the contract by leaving them outside the compartment. The goods having been stolen, the bailee was held liable for their value. In the course of the opinion, the court said:

"The agreement to store them in a particular place was made to obtain greater security than would be afforded in the general warehouse. That agreement having been breached and the tires being stolen, it is unnecessary to consider the question of negligence under the second theory presented in plaintiff's pleading. When the defendant placed the tires in a place different from that agreed upon and which subjected them to a risk beyond that contemplated by the parties, a place from which they were stolen, the defendant became liable for the resulting loss."

In *Line v. Mills*, 12 Ind. App. 100, 39 N. E. 870, it appeared that the plaintiff rented to the defendants a horse and buggy for use in visiting a neighboring city, the defendants agreeing to place the rented property in a livery stable until they used it for the return trip. Instead of putting the horse and buggy in a livery stable, defendants hitched the horse to a public hitching rack on a public square, whence the horse and the buggy were stolen. From a judgment in favor of the plaintiff, the defendants appealed, contending that it did not appear that they should be held liable for the loss of the

property. The judgment appealed from was affirmed, the court stating that the defendants had agreed to put the rented property in a livery stable, but that they failed to use such care as the contract prescribed.

Appellants cite some authorities in connection with the rule concerning proximate cause in tort cases. These authorities are not here in point.

Appellants' first assignment of error is without merit.

■ By their second assignment of error, appellants contend that the court erred "in not determining if the damages recoverable for the breach of the contract were such as might reasonably be supposed to have entered the contract."

In support of this assignment of error, appellants argue that the trial court "failed to look to the purpose the key was to be removed from the plane, to see if the possible stealing of the plane was why they contracted to remove the key."

The trial court decided that respondent was entitled to recover damages for the destruction of the plane because of appellants' failure to remove the key from the ignition, and that the destruction of the plane, after its appropriation by Driver and Berg, was a direct consequence of that appropriation. This was a direct and not an incidental damage.

In *Martinac v. Bakovic*, 158 Wash. 193, 290 Pac. 847, this court affirmed a judgment in favor of the plaintiff, entered pursuant to the verdict of a jury, in an action for damages suffered by the plaintiff because of the defendant's delay in building and delivering a purse seine fishing boat, it appearing that the plaintiff had suffered serious loss by reason of such delay. In the course of the opinion, we said:

"Where two parties make a contract which one of them breaches, the damages to which the other party is entitled by reason of such breach are such as may reasonably be considered as arising according to the usual course of things from such breach, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of a breach of the agreement. . . .

"The general rule of the measure of damages growing out of the breach of a contract is stated in the case of *Hadley v. Baxendale*, 9 Exch. 341, 353 [English Exchequer Reports (Welsby, Hurlstone & Gordon)] as follows:

" 'Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated. But, on the other hand, if these special circumstances were wholly unknown to the party breaking the contract, he, at the most, could only be supposed to have had in his contemplation the amount of injury which would arise generally, and in the great multitude of cases not affected by any special circumstances, from such a breach of contract.'

"The foregoing is quoted with approval in *Sedro Veneer Co. v. Kwapil*, 62 Wash. 385, 113 Pac. 1100, and is the rule in this jurisdiction."

The rule approved in the *Martinac* case has been followed in other decisions of this court.

In the case at bar, the entire situation and all surrounding circumstances were within the knowledge of both parties to the agreement.

Appellants argue that they should not be held liable for the result of the criminal act of Driver in, in effect, stealing the plane, because it does not directly appear that such a possibility was within the contemplation of the parties.

Certainly, the theft or unlawful use of the plane, with resulting damage, was a possibility inherent in the situation, under the circumstances disclosed by the evidence in the case at bar. Any plane or motor vehicle is subject to

theft and resulting damage. As above stated, the fact that the key was left in the ignition constituted an invitation, or at least a suggestion, to a prowler to turn the key and start the motor, and fly the plane if he knew how to do so. The fact that this particular possibility of damage to the plane was not directly mentioned by the parties, when instructions were given to remove the key, is not controlling. 5 Williston on Contracts (Rev. ed.) 3774, § 1344, *supra*.

In *Deane v. Michigan Stove Co.,* 69 Ill. App. 106, the plaintiff sued for and recovered damages against the vendor of a warranted burglarproof safe which was burglarized. On appeal, a judgment in favor of the plaintiff was affirmed. The facts before that court constituted a stronger case in favor of the plaintiff than the facts in the case at bar. The court's statement that any attempt to burglarize the safe "was the essential element that both parties contemplated as being the thing to be guarded against, and concerning which the warranty was interposed," is here in point. The court then said that the burglary that followed "was the natural and proximate result of the breach, and the recovery was right."

In 6 Am. Jur. 329, § 223, after calling attention to circumstances pursuant to which a bailee may be excused for his failure to return the subject of the bailment or relieved from liability therefor, the text continues:

"It is otherwise where the bailee has done some act inconsistent with, or in violation of, the terms or purpose of the bailment, which made the loss or damage possible, and without which it probably would not have occurred, notwithstanding his complete freedom from negligence in respect of the immediate cause of loss."

We find no merit in appellants' second assignment of error.

By their third assignment of error, appellants contend that the trial court erred in refusing to require respondent to answer one question concerning his reason for instructing appellant McCown to take the key from the plane. During the course of the cross-examination of respondent, appellants' counsel asked: "Your thought was of taking care it was not swiped or stolen?" Respondent's counsel objected

to the question, and, after a short colloquy between the court and appellants' counsel, the following occurred:

"THE COURT: He said he told them to take the key. *Why* he told them is not important. MR. GARLAND: I think it is, Your Honor. I'd like to prove by this adverse witness that he knew that the taking of the key would have no relativity to the plane's being swiped or stolen. That is the purpose— THE COURT: That is what the court has to decide. You might as well have him decide the case for you."

The record clearly discloses that respondent and his agent instructed appellant McCown to remove the key from the airplane. Appellants argue that Driver could have started the plane without the key, but, as above stated, we do not consider that fact, if it be a fact, as determinative of the questions presented upon this appeal.

In 1 Sutherland's Law of Damages (4th ed.) 50, § 14, appears the following:

"A defendant is conclusively presumed to have contemplated the damages which result directly and necessarily or naturally from his breach of contract."

Apparently, by their third assignment of error, appellants attempt to reargue the question concerning the intention of the parties. This matter has been fully discussed under their second assignment of error.

Finding no error in the record, the judgment appealed from is affirmed.

SCHWELLENBACH, C. J., HILL, DONWORTH, and FINLEY, JJ., concur.