[No. 19459. Department Two. January 8, 1926.]

W. J. KIRBY, *Repondent*, v. AMERICAN RAILWAY EXPRESS COMPANY, *Appellant*.[1]

[1] CARRIERS (8)—ACTS CONSTITUTING DELIVERY TO CARRIER. There was a constructive delivery to a railway express company, where it appears that the company had no agent at a way station where trains were flagged, and it was not customary to open the express car at such places, but that the next car was a baggage car with the express company's name, and it was usual to open such car and receive shipments of express, and that the shipment was hurriedly thrown into such car with notice that it was express, after the brakeman had said "all right, we'll take it."

[2] CARRIERS (30, 33)—ACTION FOR DELAY IN TRANSPORTATION—DAMAGES. While the mere sending of a broken casting by express will raise no presumption that speed in delivery is urgent, an express company is liable for special damages, during three days' delay in locating a broken pump casting, lost by the company's negligence, and which resulted in the closing down of a mine for three days at an expense of $84 a day for wages of the pumping crew.

[3] SAME (37)—LIMITATION OF LIABILITY—LIABILITY SUBJECT TO LIMITATION. Special damages through failure of an express company to deliver a pump, resulting in the closing down of a mine for three days at an expense of $84 a day for wages of the crew, is not limited to fifty cents per pound of any shipment weight less than one hundred pounds, as required in interstate shipments by the Carmack amendment, where no receipt was given, and there is nothing in the record that such receipts applies to anything but loss of the goods (PARKER, J., dissenting).

[1]Reported in 242 Pac. 24.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered April 4, 1925, upon findings in favor of plaintiff, in an action for delay in delivering a shipment. Affirmed.

*Cannon & McKevitt,* for appellant.

*John L. Dirks,* for respondent.

MACKINTOSH, J.—In Idaho, on the main line of the Chicago, Milwaukee & St. Paul Railway is a station which bears the name of Adair. Trains will stop here when flagged, and receive passengers, express and baggage. There is no station or ticket or baggage or express agent. Near Adair is located a mine owned by the respondent, and on August 25, 1923, an accident having happened to the pump at the mine, it became necessary to send a portion of the pump, weighing 95 pounds, to Spokane, in this state, for repair. The casting was taken by the employes of the mine to Adair, and the westbound fast passenger train was flagged and came to a stop, and the casting was put aboard. The first car back of the engine was an express car, owned by the appellant, in which there was an express agent employed by appellant, and on the side of this car appeared the words, "American Railway Express." It was the custom of the company not to open express cars at stops such as Adair, and, on the occasion when the casting was put aboard, this express car was not opened. The car immediately behind the express car was the same in color and appearance as the express car, and had the words "American Railway Express" upon it, with the additional word "Baggage." This car was open when the stop was made at Adair, and into it the casting was put. There was no other business to be transacted at Adair, and the stop was not more than a minute in duration. There was no

employe of the American Express Company in the car in which the casting was put, nor was there a baggage man employed by the railway company, the regular baggage man being at that time in some other part of the train, and the car being in charge of a brakeman. No way bill or receipt was issued, and the employes of the mine, when they tossed the casting into the car, merely said to the brakeman "Express for Spokane," he responding, "All right, we'll take it." There is some claim that the mine had expressed empty milk cans to Spokane for a considerable time in this same way. The casting was not taken from the baggage car into the express car, and neither the baggage man nor the express messenger was informed of the matter, and when the train arrived at the city of St. Maries, Idaho, the baggage man in looking through his car saw on the casting a tag which contained the words, "Idaho Laundry Company, St. Maries, Idaho," and, without observing closely enough to have discovered that these words had been scratched through and that the tag contained the address of the machinery company in Spokane to which the casting was to go, hurriedly unloaded the casting on the platform at St. Maries, and the train proceeded. A few days afterwards, the mine being prevented from operation by failure to have the casting returned, the owner set an inquiry on foot to discover the reason for the delay, which resulted in the discovery of what had happened to the shipment. The express company then, as soon as possible, recovered the shipment in Spokane, but in the meantime several days had elapsed. From the time the casting was loaded at Adair until it was finally delivered at Spokane, it was handled exclusively by employes of the railway company.

This suit was begun to recover damages from the express company for the delay in shipment, and re-

sulted in a judgment in favor of the respondent for $252, covering a delay of three days at $84 per day.

[1] The principal obstacle raised by the express company to prevent the respondent's success is, that no delivery of the casting was ever made to it. It may be at once admitted that there was no actual delivery to the express company, but the facts establish a constructive delivery. The situation that existed at the place called Adair is not the situation that would obtain at a regular railroad station. There was but a momentary stop of a through train, no agent of the express company in sight or available, the express car itself closed, the baggage car bearing the name of the express company open; the testimony shows that it was being opened as the train came to a stop. There was no opportunity for thorough investigation of exactly to whom delivery was to be made, though there was an invitation by the express company by having its name on the baggage car to deliver express to it there. The situation is not at all comparable to that which would obtain where the intending shipper of express would have time to investigate, make delivery according to all the rules of the express company, receive a receipt, and transact his business as ordinarily it would be expected to be transacted. In addition to the invitation, there was testimony that, according to custom as it had existed between the mine and express company, former shipments of express had been handled in this same way. Under this situation, what was done amounted to a constructive delivery and receipt. Hutchinson on Carriers (3d. ed.), §§ 115, 116, 118, deals with the subject of constructive delivery and lays down the general rule that while, in order to bind a carrier, there must be a delivery of goods to him or to someone with authority from him, yet if the delivery is to someone who may rightfully be presumed to have such authority, or in

such a manner as has become the practice and usage between the parties, or in a place or way which the carrier has led the shipper to believe will be satisfactory, such delivery will be sufficient.   10 C. J. 223; *Yarborough v. Southern R.*, 78 S. C. 103, 58 S. E. 936; *Evansville & T. H. R. Co. v. Keith,* 8 Ind. App. 57, 35 N. E. 296; *Dunnington & Co. v. Louisville & N. R. Co.,* 153 Ky. 388, 155 S. W. 750.

[2]   There remains for determination the amount of damages to which the respondent is entitled.   He is claiming special damages, occasioned him by the delay in the delivery of the casting to the machinery company in Spokane.   But, before he can recover such special damages, he must show that the carrier had notice that prompt delivery was necessary and that, if it was not made, special damages would be occasioned to the shipper; otherwise, the carrier would only be liable for such damages on account of delay as might reasonably have been contemplated by the parties at the time the shipment was made.   10 C. J. 315; *Stone v. Adams Express Co.,* 122 S. W. (Ky.) 200; *Higgins v. United States Express Co.,* 83 N. J. L. 398, 85 Atl. 450.   In this case, of course, there was no statement made of the special circumstances which rendered the prompt transportation of the goods necessary.   It is argued by the respondent, however, that, from the very fact that a piece of machinery was delivered, the carrier ought to know that prompt transportation and delivery were called for, and that special damages might result from a delay; that the fact that the casting was sent by express was a warning to the carrier that as a matter of common knowledge the shipment of goods such as this by express was a request for the utmost speed.   We are not prepared to adopt this rule; to do so would be to always create an implied or constructive notice to an express company that special damages would result

from failure to promptly deliver express matter. A delivery to an express company does not necessarily mean that the speed of the delivery is the main consideration. Other elements may prompt carriage by express rather than by freight. And even if it could be assumed that the speed of the delivery was the prime consideration, still it would not follow therefrom that it was contemplated that special damages might result from failure to exercise speed.

The rule, however, is subject to a modification that, where the carrier receives subsequent notice from the shipper to the effect that further delays, after the goods should have been delivered, will occasion special damage, for delay suffered thereafter by reason of the carrier's negligence, in not tracing and finding the goods, the carrier will be liable. 10 C. J. 317, 318. Here the testimony shows that, although there was no notice given at the time of the shipment, on August 28 the respondent telegraphed to the appellant, notifying of the delay and that the delay was occasioning him a daily damage. The trial court found that three full days elapsed after the receipt of this telegram before the casting was found by the appellant and delivered to the machinery company in Spokane, and that this delay was due to the negligence of the appellant; that the special damage resulting therefrom consisted of the closing down of the shaft pump of the mine, that the amount paid to the pumping crew was $84 a day, and gave judgment for three days' wages. We are satisfied that the evidence does not preponderate against these findings of the trial court, and they must be sustained.

[3] The appellant further argues, however, that the amount of damages cannot exceed, in any event, fifty cents a pound on the weight of the shipment, the tariff and schedules of rates being properly on file, and they providing that for shipments of this kind, where the

value of the shipment is not disclosed, the carrier should not be liable for more than fifty dollars on any shipment of one hundred pounds or less, and not exceeding fifty cents per pound on any shipment weighing more than one hundred pounds, unless a greater value is declared. The answer to this contention would seem to be that there was no receipt given, such as is required on interstate shipments by the Carmack amendment, and the record does not show that the limitation of liability contained in those receipts applies to anything other than loss of the goods shipped, while the claim here is for damages for delay in delivery. Also, in the absence of a receipt, it would seem that the common-law liability should attach. This is a question upon which the supreme court of the United States apparently has not squarely passed, and the decisions of that court, so far as they throw any light on what the proper conclusion should be, look in both directions. There are opinions indicating that the tariff and schedules are binding, even where no receipt is given. On the other hand, there are opinions indicating that where the carrier has given no receipt the limited liability does not apply. But as we view it, it is unnecessary for this court to attempt to reconcile these decisions and lay down a rule, for the reason that, so far as it appears in this case, the receipt, if it had been given, would not have applied to the case of special damages arising from delay in delivery.

The judgment is therefore affirmed.

TOLMAN, C. J., MITCHELL, and MAIN, JJ., concur.

PARKER, J. (dissenting)—I cannot see my way clear to concur with the majority opinion touching the question of the amount that respondent is entitled to recover. It seems to me that respondent cannot in any event recover a greater amount than he would be en-

titled to recover for the loss of the casting. I think we must proceed upon the assumption that, had a shipping receipt been issued, it would have been of the ordinary form of such receipts. Under such a receipt, it seems plain that appellant's statutory liability would in this case have been not to exceed $50; the casting weighing less than one hundred pounds.