[No. 22796. Department Two. February 4, 1931.]

C. E. JELLUM, *Respondent,* v. GRAYS HARBOR FUEL COMPANY, *Appellant.*[1]

[1]Reported in 295 Pac. 939.

*Theodore B. Bruener,* for appellant.
*J. E. Stewart,* for respondent.

BEELER, J.—This suit involves a collision between the trucks of the respective parties. The cause was tried to the court without a jury. The essential facts may be summarized as follows:

Wishkah street extends east and west, and crosses, at right angles, Kansas and Harbor streets which run north and south, all being thoroughfares within the corporate limits of the city of Aberdeen. The defendant, prior to and on January 25, 1930, maintained a barn on the south side of Wishkah street, about midway between Kansas and Harbor streets, in which it kept its trucks. This barn is recessed a distance of from twenty to thirty feet south of the south curb line of Wishkah street, with a private driveway extending . from the street to the barn entrance.

At about 8:00 o'clock on the morning of January 25, 1930, the defendant, by its driver, Festret, was backing one of its trucks out of the barn across this driveway onto Wishkah street, and, as the rear end of the truck arrived at a point on the street about four or five feet from the south curb line, the driver stopped to determine whether the left side of the truck would clear an automobile, the property of Mr. Phipps, one of the owners of appellant fuel company, parked about two feet east of the driveway on the south side of Wishkah street, facing east. Being satisfied his truck would clear the parked car, he moved to the right side of his seat, and looked west on Wishkah street to ascertain whether traffic was approaching from that direction. Seeing none, he slid back to the left side of

the seat and resumed his position at the wheel, again placed the truck in motion, and started to back in a diagonal northwesterly direction across Wishkah street. After moving the truck a distance of approximately two to four feet, the rear end came in collision with the right side near the front of respondent's truck, which, at the time, was being operated in an easterly direction on Wishkah street at approximately 25 miles an hour. The trial court found that the collision was due to defendant's negligence, and entered judgment in favor of plaintiff, in the sum of $211.30 for repairs to his truck, on the first cause of action, and in the sum of $120 for loss of use of the truck, on the second cause of action. The defendant has appealed.

Appellant contends that respondent was guilty of contributory negligence as a matter of law, and that the trial court erred in entering judgment in his favor. It argues that respondent had a clear and unobstructed view for a distance of approximately one hundred fifty to two hundred feet before arriving at the point of collision, and that he saw, or by the exercise of ordinary care and caution, should have seen, appellant's truck as it was being backed onto the street. Further, that respondent was negligent, in that he was driving his truck with the windshield so coated with frost as to render it impossible for him to readily observe traffic upon the street.

On the other hand, respondent testified that, as he was traveling eastward on Wishkah street, his car was from eight to ten feet from the south curb line; that the surface of the northerly side of Wishkah street was in bad repair; that the pavement was uneven and rough, and contained holes at various places, with the result that traffic moving westward used the center of the street; admits that the windshield was somewhat

coated with frost, but testified that he partially cleaned it before starting his car, and that the condition of the windshield did not interfere with his driving. He further testified that, when he first saw appellant's truck, its rear extended out on Wishkah street about six and a half feet, and was approximately parallel with the automobile parked east of the driveway, and that appellant's truck was then traveling from three to four miles an hour, at which time he was within twelve feet of it, and, to avert an impact or collision, he swerved to the left, but, notwithstanding, the rear of appellant's truck came in collision with the right side of his truck.

Now, it must be borne in mind that appellant's truck came to a stop on Wishkah street at a point approximately four or five feet from the south curb line. Unfortunately, the record is silent as to how long appellant's truck stood at that point. There is no evidence upon this important issue, except such as is gathered, inferentially, from the testimony of appellant's driver, Festret, who testified on direct examination:

"I stopped at the curb to see if I was missing Mr. Phipps' car. It was standing at the curb on the east side. I saw I was going to miss it. Then I slid over across the seat to see if anything was coming from the west."

And on cross-examination he testified:

"I was backing out of the barn and expecting to turn the rear of my truck westerly. My truck was angling west and I had to see whether or not the front end of my truck cleared the Phipps car. *That would put the body of my truck between me and the traffic that might be traveling east.* After I saw I was clearing the Phipps car I slid over and looked out of my truck to the west and then had hardly moved my truck when the collision occurred." (Italics ours.)

How much time elapsed, after appellant's truck was brought to a stop, until it was again put in motion? How much time was consumed by appellant's driver in determining whether the truck would clear the Phipps car, in moving to the right side of the seat, in looking westward to determine the condition of traffic, in resuming his position at the wheel, in shifting gears and putting his car in motion? There is no direct testimony in answer to this query, but the inference is natural and logical that appellant's driver must have consumed from ten to twelve, or, possibly, fifteen seconds, which was sufficient time to enable respondent, going at 25 miles per hour, or about 37 feet per second, to travel approximately two city blocks. The fact is thus clearly established that respondent never saw and could not have seen appellant's truck, from the time it emerged from the barn entrance to the time it came to a stop on Wishkah street. The evidence is susceptible of no other construction.

Appellant contends that respondent could readily have seen its truck backing out across the private driveway at a distance of one hundred fifty to two hundred feet back from the point of collision, if he had kept a lookout. The answer to this contention is that, when respondent was one hundred fifty to two hundred feet away from the point of collision, appellant's truck was standing still, and there was nothing to attract his attention to the truck while not in motion. The fact is unanswerably established by the testimony of appellant's driver that the collision occurred within a fraction of a second after he placed the truck in motion the second time.

"After I had stopped to see whether I was going to clear the Phipps car, and I saw I was going to clear it, I moved and slid back in my seat, looked up towards the west, *just barely moved the truck when I heard the crash*." (Italics ours.)

At most appellant's truck did not traverse more than two, possibly four feet, from the time it was in motion to the moment of impact. Respondent testified he did not observe the truck until "it was beyond the car parked there," at which time he was within twelve feet of the truck, and it was then moving backward in a diagonal direction at from three to four miles per hour. Respondent had but a fraction of a second within which to attempt to avoid the collision, and anything he did was done in an emergency, not created by him but brought about by the negligent act of appellant's truck driver by backing diagonally and into approaching traffic on the street. Under all the facts and attendant circumstances surrounding the collision, the trial court properly found respondent was not guilty of contributory negligence.

Appellant next claims that it was guilty of no negligence in backing its truck onto Wishkah street. We cannot agree with this contention. The evidence does not disclose the exact width of Wishkah street, but indicates it to be from twenty-four to forty feet. The street is rather heavily traveled, especially in the morning around 8:00 o'clock. The testimony of appellant's driver establishes the fact beyond controversy that, after he looked west on Wishkah street to determine whether traffic was approaching from that direction, he resumed his position at the wheel of his truck, and, for the second time, started backing in a diagonal northwesterly direction, without keeping a lookout for oncoming traffic. The evidence does not disclose the length of appellant's truck, but it is established that it was a large truck of steel construction used for hauling wood. Immediately prior to the impact or collision, the truck was operated in a direction or manner so as to place the body of the truck, as the

driver of the truck himself states, *"between me and any traffic that might be traveling east."*

Appellant's driver had no right to assume that the street would remain clear of approaching traffic from the west, the direction in which he was backing his truck, but was bound to anticipate the approach of vehicles from that direction. The trial court found defendant's truck to be a large steel bodied truck, and that defendant's agent, while backing the truck, was unable to see or observe traffic on Wishkah street, where plaintiff was traveling, because his view was obstructed by the body of the truck. This finding is amply supported by the evidence.

It is the law that, in backing an automobile from a private driveway onto a public street, one must exercise that degree of caution and vigilance that an ordinarily careful and prudent driver would exercise under similar circumstances, so as not to come in collision with, or injure others approaching from behind. A well considered case, containing an extensive note, is that of *Taulborg v. Andresen,* 119 Neb. 273, 228 N. W. 528, 67 A. L. R. 642.

"The law does not forbid the backing of an automobile upon the streets or highways, and to do so does not constitute negligence, but the driver of an automobile must exercise ordinary care in backing his machine, so as not to injure others by the operation, and this duty requires that he adopt sufficient means to ascertain whether others are in the vicinity who may be injured. It is his positive duty to look backward for approaching vehicles and to give them timely warning of his intention to back, when a reasonable necessity for it exists; and he must not only look backwards when he commences his operation, but he must continue to look backward in order that he may not collide with or injure those lawfully using such street or highway. 42 C. J. 935; Blashfield Cyc. Auto. Law,

pp. 529-533; Berry, Auto. 4th ed. §§ 235, 954; Huddy, Auto. p. 324, *Lee v. Donnelly,* 95 Vt. 121, 113 Atl. 542.''

■ It is next urged that the court improperly allowed, as an item of damage, the loss incurred for non-use of the truck while being repaired. It is undisputed that the respondent was earning $38 per day with his truck, and that the maintenance cost, in the way of gas, oil, and depreciation, was $14, leaving a net earning of $24 per day, and that it took five days to be repaired. Appellant contends that it was the duty of respondent to obtain, if possible, another truck with which to perform his work, while his truck was being repaired, and thereby minimize the loss. With this we agree. But the evidence shows that he performed his duty in this regard. He interviewed the Lambey boys, but found that their trucks were not heavy enough to do the work in which he was engaged. He next interviewed one Matlock, who was using his truck in hauling wood. He further testified that it was impossible to rent a truck from a dealer. He admitted that he made no effort to rent a truck from a transfer company, but testified that, even if he could have rented one, the cost would have been from $25 to $30 per day, and possibly more. Furthermore, appellant offered no testimony to show that respondent could have rented a truck from a dealer or from a transfer company, nor what the cost would have been. In the absence of any showing by appellant in this regard, we are forced to the conclusion that the loss incurred by respondent for the non-use of his truck was properly allowed by the trial court. We have frequently held that loss of use is an element of damage in cases of this character. This court in the case of *Western Machinery Exchange v. Northern Pacific R. Co.,* 142 Wash. 675, 254 Pac. 248, said:

"Some contention is made in behalf of the railway company that there should not have been any award of damages on account of the loss of the use of the crane by the machinery exchange during the time necessarily consumed in the repairing of it. We have recognized loss of use as an element of damage in such cases in the following of our decisions: *Anderson v. McLaren,* 114 Wash. 33, 194 Pac. 828; *Madden v. Nippon Auto Co.,* 119 Wash. 618, 206 Pac. 569; *Norris v. Hadfield,* 124 Wash. 198, 213 Pac. 934, 216 Pac. 846; *Kirby v. American Railway Express Co.,* 137 Wash. 241, 242 Pac. 24. We think such allowance is proper in this case, although cases might arise wherein such allowance would not be proper."

The court allowed interest on the judgment from the date of collision to the date of judgment, in the sum of $10.65. This being an unliquidated claim, the allowance of interest was improper. Under the established rule, interest on unliquidated claims should only run from the time of judgment. *Locomotive Exchange v. Rucker Bros.,* 106 Wash. 278, 179 Pac. 859; *Lloyd v. American Can Co.,* 128 Wash. 298, 222 Pac. 876; *Case v. Knight,* 129 Wash. 570, 225 Pac. 645; *Rood v. Horton,* 132 Wash. 82, 231 Pac. 450; *Wright v. Tacoma,* 87 Wash. 334, 151 Pac. 837.

The judgment must be modified by eliminating the interest item of $10.65. In all other respects, the judgment is affirmed. Respondent is allowed costs.

TOLMAN, C. J., BEALS, MILLARD, and FULLERTON, JJ., concur.