[No. 31935. Department One. May 29, 1952.]

C. F. DALLY *et al., Respondents and Cross-appellants,* v. A. B. ISAACSON, *Appellant.*[1]

[1]Reported in 245 P. (2d) 200.

*J. A. Adams,* for appellant.

*Ferguson, Burdell & Armstrong,* for respondents and cross-appellants.

MALLERY, J.—C. F. Dally and E. J. Beslow, doing business as Dally Construction & Engineering Co., hereafter referred to as Dally, were the successful bidders for the construction of a housing project for the army engineers at the Chief Joseph dam near Bridgeport, Washington.

A. B. Isaacson, doing business as Modern Manufacturing Company, hereafter referred to as Isaacson, was engaged in the business of manufacturing millwork.

Isaacson had studied the plans and specifications of the army engineers, and, upon learning that Dally was low bidder on the entire job, sent his bid on the millwork to Dally. A contract for the millwork resulted.

Dally's contract required the construction to be completed in stages, upon specified dates, and called for certain quality of material and workmanship.

The trial court found that Isaacson was at all times aware of these specifications. This situation, therefore, is not comparable with the mere sale of goods where the seller is not informed and not concerned with the specific use the buyer has in mind.

Very shortly after the work began, trouble arose between Dally and Isaacson over the rate of delivery of the millwork and its quality. These difficulties were many and frequent, and, on September 25, 1950, Dally elected to terminate the contract, on the basis of breaches in these matters on Isaacson's part. Thereupon, Dally brought this action for damages arising out of the claimed breaches.

At the trial, the testimony was in conflict, and was sufficient to sustain a judgment for either party whose version of the facts found acceptance by the trial court.

The trial court did not find for either party completely. It found that Isaacson had substantially performed his contract so that he was entitled to his agreed compensation, but with offsets to the amount of Dally's damages. *Evers v. Broadview Dairy Co.*, 147 Wash. 570, 266 Pac. 726.

The trial court, on the other hand, found that some, although by no means all, of the damages sought by Dally were substantiated. For a number of reasons, it did not allow damages based on the penalties imposed for noncompletion of the project on schedule. Some of the penalties assessed were remitted by the government. The bulk of those not remitted, after extensions of time had been granted, was assessed for noncompletion of street improvements and parts of the contract having nothing to do with millwork. The trial court's finding that Dally had ample time to complete the work will not be disturbed.

The trial court did find that some of the material was defective and below the specifications that Isaacson was obliged to meet. This damaged Dally by necessitating extra labor on the job in preparing it for installation.

The trial court also found that tardy delivery of some of the material made extra labor necessary.

Isaacson made a strong showing, which the trial court could have believed, that Dally's damage was not due to defective material or delay, but was due to bad workmanship and management on Dally's part.

From our examination of the record, we find ourselves in the same frame of mind as the trial court in being unable to reconcile the testimony to the extent that an exact computation of the damage is possible.

The trial court allowed $12,000 damage to Dally for the delays in delivery and defective materials, based upon his showing of the extra labor costs these had caused. This amount, being well within the evidence, is sustained, plus $1,777 for additional supervisory overhead expenses incurred after the termination of the contract, which would not have been necessary had the proper quality of materials been timely furnished.

The appellant Isaacson contends that an erroneous measure of damages was allowed by the trial court. It is his position that he substantially performed the contract. He argues that title to the millwork passed when it was accepted at the job site, and that no claim can now be made for defects in the materials which were not rejected at the time of delivery. He relies upon RCW 63.04.490 [cf. Rem. Rev. Stat., § 5836-48], which reads: .

"The buyer is deemed to have accepted the goods when he intimates to the seller that he has accepted them, or when the goods have been delivered to him and he does any act in relation to them which is inconsistent with the ownership of the seller, or when, after the lapse of a reasonable time, he retains the goods without intimating to the seller that he has rejected them."

This contention is answered by the next section of the uniform sales act, RCW 63.04.500 [cf. Rem. Rev. Stat., § 5836-49], which reads:

"In the absence of express or implied agreement of the parties, acceptance of the goods by the buyer shall not discharge the seller from liability in damages or other legal remedy for breach of any promise or warranty in the contract to sell or the sale. But if after acceptance of the goods,

the buyer fails to give notice to the seller of the breach of any promise or warranty within a reasonable time after the buyer knows, or ought to know, of such breach, the seller shall not be liable therefor."

Timely notice of defects in the millwork and delays in its delivery was evidenced by voluminous correspondence and oral communications between the parties.

We cannot sustain appellant Isaacson's contention in this regard.

The real gravamen of appellant's appeal, however, is that consequential damages should not have been allowed, and that the trial court should have limited the amount of damage to the difference between the value of the material according to the specifications and the value of the material as delivered. He contends that the consequential damages were speculative and too remote.

The general rule as to damages growing out of a breach of contract is stated in the early English case, *Hadley v. Baxendale* (1854), 9 Ex. 341, 354, 156 Eng. Rep. 151, as follows:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it. Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated."

It has been recognized in 1 Restatement, Contracts 509, § 330, as follows:

"In awarding damages, compensation is given for only those injuries *that the defendant had reason to foresee* as a probable result of his breach when the contract was made.

If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury." (Italics ours.)

This rule has been adopted in this jurisdiction. *Sedro Veneer Co. v. Kwapil,* 62 Wash. 385, 113 Pac. 1100; *Martinac v. Bakovic,* 158 Wash. 193, 290 Pac. 847; *Lewis v. Jensen,* 39 Wn. (2d) 301, 235 P. (2d) 312.

■ Consequential damages are a severe remedy for a breach of contract, for they may, in many instances, exceed the contract price of the goods sold. *Bavaria Inv. Co., v. Washington Brick, Lime & Sewer Pipe Co.,* 82 Wash. 187, 144 Pac. 68. Such a measure of damages is to be applied when, and only when, it is made to appear that it was within the contemplation of the parties that the specific damages sought would probably result from a breach of the contract.

■ Isaacson knew the terms of the contract that Dally had with the army engineers. His own contract with Dally was to furnish the millwork according to the specifications for that particular project. He must, therefore, have known that defective material would require extra labor in order to secure the approval of the army engineers, which was indispensable. He knew that it was not in Dally's power to accept and use inferior material or to take longer than the prescribed time for completion of the project.

Damage to Dally from a tardy delivery schedule of defective material was not a mere possibility. It was a certainty. This foreseeable damage was not speculative or remote, even though its amount might present some difficulties as to proof.

The judgment is affirmed as to the appellant.

The plaintiff Dally has cross-appealed, being dissatisfied with the amount of damage allowed.

Under his first assignment of error, he argues he should have been entitled to $17,832.02 damages for extra labor. This is a pure question of fact. The trial court allowed $12,000.

We affirm the trial court's finding.

In the second, third, and fourth assignments of error, Dally contends that the court should have allowed damage in the amount of the penalties imposed by the government under the completion schedule.

The trial court did not agree with Dally's version of damage caused by the delayed deliveries. It allowed for extra labor incurred thereby, but held that, under the time extension granted, Dally had ample time to complete the work.

There is inconsistent testimony regarding one of the penalties assessed, as to whether or not it was refunded. Dally had the burden of proof on this issue, and the trial court found against him. We will not overrule the trial court.

■ Furthermore, Dally's claim for recoupment, as to penalties imposed for noncompletion of streets and the like, is, indeed, too remote and speculative to have been within the contemplation of the parties. It is true Dally says that the customary and logical time to do the street work is after certain other things are done, but we will not overturn the trial court's finding against him on this matter.

In cross-appellant's fifth assignment of error, he makes a very long and complicated argument based upon facts he contends the trial court should have found.

We find his reference to the statement of facts inadequate to convince us that the trial court erred as to the facts. The gist of his contention is that the trial court wrongfully allowed $2,621.98 for extras. This seems to be in connection with the supply of soffit material, and a reworking of certain louvers which, Isaacson contends, was made necessary by the improper framing of the buildings into which they were to be installed. There seems to be some difference of opinion as to whether the soffit material is millwork or not. In any event, it was not included within the contract as found by the trial court.

■ The findings of a trial court, entered upon disputed evidence, will be approved on appeal to this court, unless, from the record, we find that they are against the weight of the evidence. *Westland Const. Co. v. Chris Berg, Inc.*, 35 Wn. (2d) 824, 215 P. (2d) 683; *Carroll Const. Co. v. Smith,*

37 Wn. (2d) 322, 223 P. (2d) 606.   No such situation is here presented.

The sixth and last assignment of error is directed to a charge allowed to Isaacson for millwork, which cross-appellant contends was "admittedly not delivered under the contract."

It appears from the record that, after notice of cancellation of the contract was given in September, 1950, Dally, thereafter, purchased some of the unfinished material which Isaacson then had on hand, and which was included under the contract. He paid for this in cash. Cross-appellant may be technically correct in contending that these goods were not delivered under the contract, since they became the subject of a subsequent and independent deal between the parties consummated after the cancellation of the contract. No complaint is made by either party with regard to the quality, quantity or price of these materials. It appears that they would have been under the contract, if the contract had not been cancelled.

We see nothing wrong with the trial court's method of calculation, which started with the total amount of the purchase price under the contract, as if it had been completed, and then deducted therefrom, by way of credits to the cross-appellant, the amounts supplied and paid for after the cancellation.

In any event, the cross-appellant, in using his own version of the facts, has not made the necessary showing under Rule on Appeal 43, 34A Wn. (2d) 47, to overturn the trial court's findings of fact.

The judgment as to the cross-appellant is also affirmed.

SCHWELLENBACH, C. J., GRADY, DONWORTH, and WEAVER, JJ., concur.