[No. 39207.   Department Two.   December 8, 1967.]

MYRLIN ACKERMAN, *Plaintiff*, v. J. P. TONKOFF, *Respondent*, GLENS FALLS INSURANCE COMPANY, *Appellant*.*

*McMullen, Brooke, Knapp & Grenier*, by *Robert E. Brooke*, for appellant.

*J. P. Tonkoff*, pro se.

LANGENBACH, J.†—Respondent Tonkoff was the proud owner of a gold Cadillac in Yakima. On September 12, 1964, it collided with a truck in his lane of travel. It was conceded that the truck owner was liable for the damages to respondent's automobile and for the extensive personal injuries sustained by him and his minor son who was riding with him.

As a result of this collision, appellant—insurance carrier for the truck involved in this accident—employed a Yakima adjuster to investigate the matter. The adjuster was notified by respondent that he desired another gold Cadillac and the adjuster endeavored to locate one for him. In the meantime respondent required the use of another automobile in his business as an active attorney in that community.

*Reported in 435 P.2d 31.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

The respondent had been an extensive user of the bonding privileges of the appellant in connection with respondent's business. To retain respondent's good will, the adjuster contacted the plaintiff—Myrlin Ackerman of Avalon Service—and procured an automobile, on a rental basis, for respondent to use until he received a new or a replacement gold Cadillac. Such a Cadillac was not immediately available in Yakima or Seattle. Later such a Cadillac was located in Portland and brought from that city for respondent's use until his order for a new gold Cadillac was filled. There had been a strike at the plant which produced such automobiles which delayed their production and delivery. Due to this condition, the new Cadillac was not delivered to respondent until the following January.

In the meanwhile plaintiff had furnished respondent with three different types of automobiles, including one Cadillac. The total value of these rentals, including January, 1965, was the sum of $1,504.18. In order to receive each of these automobiles, plaintiff required respondent to sign individual rental lease agreements for each automobile. Prior to this accident, respondent had never known or dealt with plaintiff. When the rental agreements were terminated in January, 1965, plaintiff sent respondent three separate bills for said rentals. In turn respondent sent these on to appellant's office in Seattle for payment by it.

After the adjuster in Yakima had completed his investigation, he made a report to appellant's claims manager in Seattle, who then personally proceeded with the adjustment and settlement of respondent's claims for himself and his minor son. After some telephone calls and correspondence the claims manager, an attorney, came to Yakima, where he negotiated a settlement with respondent in the presence of his law partner in their Yakima office.

By that time respondent had received the amounts of his special damages, hospital and doctors' bills for self and son, loss of personal effects, and the expenses incurred for his dog which had been injured in the same accident. These expenses were agreed upon and adjusted, as was the value of the wrecked automobile. The extent and value of the

personal injuries were also considered. Respondent advised the claims manager that he had a purchaser for the wrecked automobile, which respondent stated he would not drive again, even if it were fully repaired. The sum to be paid for it was $1,000 cash. The difference in value of the wrecked Cadillac was calculated immediately before and after the collision and the sum of $1,000 was deducted from the allowance for the Cadillac. An additional sum was allowed respondent for his personal injuries and special damages. The claims manager conferred by telephone with his home office in San Francisco concerning this settlement. The sum total agreed upon was $9,387.50. The claims manager prepared a draft for this amount in full settlement. He also prepared a general release form for this amount and it was signed by respondent. This settlement was made on November 5, 1964.

During all of these negotiations nothing was said by either party concerning the automobile rentals which were still unpaid and accruing. These rentals continued until the respondent's new gold Cadillac was obtained the following January. At that time, as indicated, plaintiff sent respondent these bills for rentals, as completed, and respondent, in turn, sent them to Seattle for payment by appellant. The claims manager refused to make the payment. He telephoned respondent's law office and told his partner that these bills were too large and he would pay only $1,000. Respondent then wrote appellant in reply that it was payment in full or nothing.

Thereupon plaintiff sued respondent for this bill and respondent cross-claimed against appellant. A summary judgment was entered against respondent for the full amount and accrued costs. He paid this judgment and now seeks reimbursement from appellant.

Appellant denied that its adjuster had authorized the rental automobiles, and claimed that this had been done by respondent who had signed the rental leases. It also pleaded an affirmative defense that respondent had executed a general release form which had included the rental costs.

Respondent testified that he did not know plaintiff and had never contacted him; that he knew nothing about the agreement which the adjuster had made with plaintiff. He had signed the rental leases when asked by plaintiff who indicated that he needed some signature for the benefit of his agency. Respondent stated that these rental costs were still accruing and were never discussed or considered at the time the settlement was made of his damages and injuries. This rental agreement was separate and independent of the expenses of the accident.

The adjuster admitted he had conferred with the claims manager with respect to a rental automobile for respondent in order to retain respondent's good will in the matter. The adjuster had requested plaintiff's agency to furnish a Cadillac for respondent. When one was not immediately available plaintiff furnished first a Chevrolet, then a Dodge and finally a Cadillac, procured from Portland. For each of these cars respondent executed a rental lease agreement which had been required by plaintiff as a matter of record.

The claims manager also agreed to look for a similar replacement Cadillac for respondent. Appellant's home office correspondence showed a discussion of this rental matter during this particular period.

At the conclusion of the trial to the court the judge stated in his decision:

[T]he Court is of the opinion that you thought you had an agreement, that this matter of the car rental would be taken care of by the insurance company, and it wasn't overlooked, you just didn't think about it, because you didn't consider it in any settlement, so it will be the order of the Court that there was a mistake made,
. . . .

In the appeal there are six assignments of error: four against certain findings and two against certain conclusions. The first attacked the finding that the adjuster, who was investigating the matter for appellant, agreed to furnish the rental vehicles to respondent and at all times was acting within the apparent scope of his authority; that the adjuster had made the arrangement with plaintiff and it was

clearly the understanding that the vehicles were being rented by appellant for respondent's use and benefit; and that appellant would eventually pay the ultimate car rental bill.

The second pertained to another finding that the vehicles were furnished to respondent at the behest of the adjuster. At the time of the settlement the question of car rental was not raised and this was not a part of the settlement because this was an arrangement separately and independently made by appellant through its adjuster.

These were argued together. The evidence showed that all negotiations with plaintiff had been carried on by the adjuster. He and the claims manager endeavored to locate a suitable automobile for respondent's use during the period of repair or replacement of respondent's own Cadillac. The court heard these witnesses and weighed their testimony on these points and thereafter reached its conclusion as to the merits of these contentions. The trial court having decided the facts in respondent's favor, we cannot conclude that the facts do not support this determination.

The third assignment of error attacked another finding which stated that when the general release of November 5, 1964, was executed, it failed to express the true intention of the parties because it did not specifically exclude the matter of car rental which was a separate obligation on the part of appellant.

The fourth assignment was against a finding that the obligation of car rental was that of appellant which failed to pay it and thus the respondent was damaged in its amount and court costs.

These two assignments were also argued together. Appellant contended respondent's automobile was a total loss and therefore he was not entitled to any loss of use. Respondent testified he wanted a replacement; that a repaired automobile would not be at all satisfactory, and the adjuster and claims manager for appellant endeavored to procure a replacement for the damaged automobile.

There was testimony that respondent's automobile

had some value, could be repaired and had been repaired and then sold $1,000 cash. Appellant made an allowance for its depreciated value at the time of the settlement.

The general rule with respect to loss of use of an automobile is that the owner might recover, as general damages, the use value of which he is deprived because of defendant's wrongful act. *Holmes v. Raffo*, 60 Wn.2d 421, 429, 374 P.2d 536 (1962).

The fifth assignment of error was leveled against a conclusion of law that the written release of November 5, 1964, should be modified by an insertion therein that the matter of rental for a vehicle for the use of respondent by appellant was separate and independent of the general release and said obligation was not released under the general release agreement.

The sixth assignment pertained to a conclusion that after the modification, as referred to in assignment five, respondent was entitled to a judgment for the sums paid to plaintiff because of appellant's failure to pay the rentals of said automobiles used by the respondent during this interval.

They were argued together on the basis that no mutual mistake had been proven. The matter of a mutual mistake is not essential to the determination of the case at bar.

The testimony of the adjuster, the claims manager, and the respondent showed that the car rental leases were separate and independent from the settlement of the damages incurred in the automobile accident. The trial court properly found from this evidence that the car rentals constituted a separate and independent contract and agreement. Accordingly, the costs thereof were not properly within the purview of the general release agreement. In addition, at the time of that settlement, these rentals were still accruing and were not then determined.

Appellant further argued that the terms and provisions of the general release covered all legal claims which might be developed as flowing from this accident. It relied upon the case of *Beaver v. Estate of Harris*, 67 Wn.2d 621, 409 P.2d 143 (1965). That case is not apposite inasmuch as it

concerned an effort to avoid a release of a general claim for the accident itself. In the case at bar the modification was not of a general release. It was for the exclusion of a separate and independent agreement distinct and apart from the accidental consequences. It was entered into for an entirely different purpose.

The agreement to furnish an automobile for respondent's use during the repair or replacement of his damaged automobile was independent of the adjustment of the damages sustained in the accident. Consequently, the trial court was correct in its judgment that respondent was rightfully entitled to reimbursement for these car rentals which lawfully should have been paid by appellant inasmuch as appellant had incurred them through the actions of its adjuster and claims manager.

The judgment is affirmed.

FINLEY, C. J., HUNTER and HAMILTON, JJ., concur.

NEILL, J., concurs in the result.