[No. 1934-2.   Division Two.   February 16, 1977.]

King Logging Company, Inc., *Appellant,* v. Robert J. Scalzo, et al, *Respondents.*

*Dennis J. LaPorte*, for appellant.

*Romney Brain* and *Moschetto & Alfieri*, for respondents.

REED, J.—Plaintiff, King Logging Company, appeals from that portion of a Pierce County Superior Court judgment which denied it recovery of profits allegedly lost during the period of necessary repairs to a log yarder negligently damaged by defendants. Defendants cross-appeal from the award of damages for repair costs. We affirm in part and reverse in part.

In September 1972 plaintiff owned a Madill log yarder, a specialized piece of equipment weighing several tons and having a value of approximately $105,000. Plaintiff, who had contracts with Weyerhaeuser Company to remove timber which had already been felled on two different sites on Weyerhaeuser lands in Pierce County, intended to employ the yarder at the higher of the two sites to insure removal before weather conditions became too severe. It was then to be moved to the lower site and worked in conjunction with smaller equipment until the season ended.

Defendants Scalzo were engaged in heavy equipment hauling for the general public, were registered as common carriers with the Public Service Commission, held themselves out as such, and charged rates approved by the commission. Defendant company had hauled the Madill yarder for plaintiff on two or three previous occasions, utilizing a specially designed tractor and lowboy trailer. On September 19, 1972, plaintiff's representative, Bud King, contacted Victor Scalzo by telephone and requested the yarder be transported a distance of approximately 25 miles over Wey-

erhaeuser roads to the upper site. Scalzo was not told of the Weyerhaeuser contracts nor of plaintiff's particular dependence upon the Madill yarder in order to complete them. In fact, he was not interested in the reasons for the haul, but only in road characteristics. Scalzo testified he declined to accept the job after King described the roads to be traversed. According to Scalzo, King called again and after further discussion about the nature of the roads, Scalzo agreed to make the haul. However, after conferring with his driver, Vaughn Burk, Scalzo still had reservations about the roads and called King for reassurance. He again agreed to make the haul and arranged that Burk would meet King on September 22, 1972. On that date Burk drove the tractor-trailer to the yarder's location, where it was loaded on the trailer, and was returning with it over the same road he had just traveled when the yarder fell from the trailer on a curve. It sustained extensive damage, and could not be repaired until some time in March 1973.

Plaintiff brought suit alleging defendants negligently damaged the yarder, thereby preventing plaintiff from removing several million board feet of logs from the Weyerhaeuser property. Plaintiff sought to recover the repair costs of $14,104.69 and additional damages of $29,657.76 for loss of profits.[1] Plaintiff offered evidence of the gross income lost and what the cost of operating the yarder with its crew would have been until plaintiff was forced to shut down by weather conditions in December 1972. Plaintiff also offered evidence that it attempted to procure substitute equipment during the period of repair, but was unable to do so because of the heavy demands of the Japanese log market that year. The trial court found defendants were negligent and awarded plaintiff its repair cost of $14,104.69,

---

[1]Plaintiff elected to sue in tort for the specific act of negligence rather than to pursue defendants upon a theory of breach of contract by the carrier, and has persisted in that course on appeal. This may account for some confusion in the trial court over the proper measure of damages. Both parties argued in terms of special damages for lost profits rather than in terms of the general damage item of loss of use which may be considered in either contract or tort actions.

but denied any recovery for the loss of "contract expectancies". or net profits. Plaintiffs appeal, assigning error to the trial court's finding of fact that such "consequential damages" were not within the contemplation of the parties when the contract was made and that, in any event, plaintiff had assumed the risk or responsibility for such damages. Defendants cross-appeal, assigning error to further findings that defendant was acting in its capacity of common carrier in hauling the yarder and that it had failed to exercise reasonable care.

For the sake of clarity, we will first dispose of defendants' contentions. Defendants challenge the sufficiency of the evidence to support the trial court's finding of negligence. This was a factual determination to be made by the trial court on conflicting testimony, and we will not disturb that finding if there is substantial evidence to support it. *Jacobs v. Brock*, 73 Wn.2d 234, 437 P.2d 920 (1968). We find there was such evidence. The trial judge personally viewed the equipment and the roadway over which it was being hauled and heard expert testimony as to how the accident occurred. There is adequate support for the conclusion defendants' driver failed to exercise ordinary care in that he negotiated the curve too sharply; this caused the lowboy to dig a corner into the ground, snapping the tie-down chains and tipping the load.

We need not directly address Scalzo's next contention that the trial court erred in concluding it was acting as a common carrier in the haul rather than as a contract carrier. As we have noted, the trial court properly found defendants failed to exercise ordinary care in transporting plaintiff's yarder. Thus, defendants failed to exercise even that degree of care required of the ordinary bailee for mutual benefit. *Althoff v. System Garages, Inc.*, 59 Wn.2d 860, 371 P.2d 48 (1962); *Ramsden v. Grimshaw*, 23 Wn.2d 864, 162 P.2d 901 (1945); *Sporsem v. First Nat'l Bank*, 133 Wash. 199, 233 P. 641, 40 A.L.R. 854 (1925). As a common carrier defendants would have been held to the highest degree of care consistent with the trade, *Conger v. Cordes*

*Towing Serv., Inc.*, 58 Wn.2d 876, 365 P.2d 20 (1961), *Mc-Curdy v. Union Pac. R.R.*, 68 Wn.2d 457, 413 P.2d 617 (1966). They cannot complain of a liability founded on their failure to exercise a lesser degree of care.

Plaintiff challenges the trial court's finding of fact No. 8, which reads in relevant part that:

> [T]he plaintiff agreed to assume the risks of loss resulting from an accident of a consequential nature but not for the costs of repair resulting from any negligence of defendant.

and finding of fact No. 10 that:

> In fact plaintiff led defendant to believe at the time the contract was entered into that if an accident occurred, plaintiff would assume all such consequential damages and in reliance thereon, defendant agreed to make the haul. . . . In fact, defendant did not want to make the haul anyway but was induced to make the haul by plaintiff and his representation that plaintiff would assume the risks of an accident.

These contested findings are based entirely upon Victor Scalzo's testimony that, "On the second call, I said that I would not be liable." Plaintiff did not object nor ask that the answer be stricken, apparently being taken by surprise. Defendants had not pleaded any such defense and, although Scalzo had previously been deposed for discovery purposes, he had never mentioned this attempt to limit liability. Scalzo admitted King did not respond to the statement, if he heard it at all.

■ It has long been the rule in this state that any attempt by a bailee for mutual benefit to disclaim or limit its liability for its own negligent acts contravenes public policy and will not be enforced. *Althoff v. System Garages, Inc., supra; Ramsden v. Grimshaw, supra; Sporsem v. First Nat'l Bank, supra.* So, in the instant case, Scalzo's apparent attempt to impose such a limitation or condition as a term of the agreement, even if heard or assented to, could have no such effect.

Even if defendants could lawfully limit their liability for their own negligent acts, such a nebulous and ambiguous

phrase cannot be construed to mean that defendants agreed to pay only repair costs and that plaintiff would bear any other losses sustained as a result of negligence in the haul. Scalzo's statement fails to provide sufficient support for the trial court's challenged findings.

We now address the principal issue of whether plaintiff may recover for a proven loss of profits resulting from its inability to remove the Weyerhaeuser timber by the end of the season. The trial court was satisfied that plaintiff sufficiently proved net losses of $29,657.76, but refused to award it these additional sums, deeming them "consequential" or special in nature, and not within the contemplation of the parties at the time they contracted. The trial court appears to have relied for its decision on the landmark rule of *Hadley v. Baxendale*, 156 Eng. Rep. 145 (Ex. 1854).

The rule of *Hadley v. Baxendale, supra*, governing the recovery of damages for breach of contract is still followed in substance in most states, including Washington, and was recently paraphrased in *Larsen v. Walton Plywood Co.*, 65 Wn.2d 1, 390 P.2d 677 (1964), at 6, as follows:

> (1) damages for breach of contract in this state can be recovered only for such losses as were reasonably fore-seeable by the party to be charged, at the time the contract was made. *Lewis v. Jensen*, 39 Wn. (2d) 301, 235 P. (2d) 312; (2) if the injury was not foreseeable, then it must specifically be shown that the defendant had special knowledge of the risk he was undertaking. *Dally v. Isaacson*, 40 Wn. (2d) 574, 245 P. (2d) 200.

The expression of the rule in the Restatement of Contracts § 330, at 509 (1932), is approved in *Larsen* and reads as follows:

> In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury.

*See also Winslow v. Mell*, 48 Wn.2d 581, 295 P.2d 319

(1956); *Dally v. Isaacson*, 40 Wn.2d 574, 245 P.2d 200 (1952).

The *Larsen* court points out that the test under (1) of its statement of the rule is not what was actually foreseen by the defendant but what ought to have been seen by a reasonable man in defendant's circumstances as a probable result *should he breach* the agreement. This is simply another way of stating that the loss or injury must be one "such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it." *Hadley v. Baxendale, supra* at 151. The rule in terms of foreseeability has also been stated thusly:

> It [*Hadley v. Baxendale*] lays down a general standard of foreseeability of damage as at the time of the bargain, . . . This standard is in the main an objective one. It takes account of what the defendant who made the contract might then have foreseen as a reasonable man, in the light of the facts known to him, and does not confine the inquiry to what he actually did foresee. If the loss claimed is unusual, then it becomes necessary to ascertain whether the defaulting party was notified of the special circumstances, but, if it is the usual consequence of breach of the class of contracts to which this belongs, and particularly if the claim of damages is based upon the regular formula for damage in like cases, then the actual contemplation of the parties becomes unimportant.

(Footnotes omitted.) C. McCormick, *Damages* § 138, at 565 (1935).

■ Plaintiff maintains that application of a contract theory of damages to its tort claim nevertheless dictates recovery of its lost profits. In essence, it argues that defendant should have foreseen these losses because it knew: (1) plaintiff's yarder was a large, expensive, and highly specialized piece of logging equipment, and (2) the yarder was being moved on Weyerhaeuser roads during the height of the logging season. We disagree because these facts, standing alone, are not sufficient to support a conclusion a loss of profits was within the contemplation of the parties when they contracted. Without special notice on their part that plaintiff (1) had the contracts with Weyerhaeuser; (2)

could not complete log removal with other available equip- ment, and (3) could not obtain suitable substitute equip- ment, defendants could not have reasonably foreseen profits would probably be lost should it default.

In *Kirby v. American Ry. Express Co.*, 137 Wash. 241, 242 P. 24 (1926), defendant express agency was absolved of liability for losses sustained because it delayed a shipment of castings which were indispensable to Kirby's mining operation, despite its knowledge of the unique nature of the shipment and the fact it was sent by "express." *See also Alton Ry. v. Oklahoma Furniture Mfg. Co.*, 190 Okla. 216, 122 P.2d 152, 166 A.L.R. 1030 (1942) and the cases gathered in the annotation, *Special Damages-Liability of Carrier*, 166 A.L.R. 1034 (1947). We think that to charge defendants Scalzo with notice that these special losses would probably result would establish a dangerous precedent for carrier liability. It is common knowledge that many contracts of carriage today involve sophisticated or highly complex items adapted to special uses or purposes, and which by their nature may be indispensable to the operation of some profit making venture; the carrier's awareness of such fac- tors should not be assumed from the mere fact it has agreed to transport such items.

As we have noted, plaintiff did not seek recovery upon any theory of contract or common-law carrier liability, but chose instead to plead and prove tortious damage to its yarder. That it may do so seems settled although our courts have not arrived at the conclusion without difficulty. *See Murray v. Aetna Cas. & Sur. Co.*, 61 Wn.2d 618, 379 P.2d 731 (1963); *Carpenter v. Moore*, 51 Wn.2d 795, 322 P.2d 125 (1958); *Compton v. Evans*, 200 Wash. 125, 93 P.2d 341 (1939).

Having successfully carried the additional burden of proving defendant's negligence, plaintiff is entitled to re- cover such sums as will reasonably compensate him for all damages sustained by him as the direct, natural, and proxi- mate result of such negligence, provided they are estab- lished with reasonable certainty. *Dyal v. Fire Cos. Adjust-*

*ment Bureau, Inc.*, 23 Wn.2d 515, 161 P.2d 321 (1945). When the claim involves injury or damage to personal property, short of complete destruction, the measure of damages is usually expressed as being limited to the difference in market value of the property before and after the injury or to the reasonable cost of repairs to restore it to its former condition, and for loss of use during the period of repair. *McCurdy v. Union Pac. R.R.*, *supra*; *Ackerman v. Tonkoff*, 72 Wn.2d 698, 435 P.2d 31 (1967). Recovery in such cases does not usually extend to profits, income, or business lost to the injured party during the period of repairs, which most often are denied as not being a natural, direct, and proximate result of defendant's negligent conduct. Rather, they are too remote, conjectural, or speculative. In quoting from *Sledge v. Reid*, 73 N.C. 440 (1875), our Supreme Court in *Cannon v. Oregon Moline Plow Co.*, 115 Wash. 273, 197 P. 39 (1921), at 280, expresses the rule and its rationale as follows:

> "Consequential damages, to be recoverable, in an action of tort, must be the proximate consequences of the act complained of, and not the secondary result thereof.
>
> . . . .
>
> "The proximate damage to the plaintiff from the tort of the defendant, was the loss of the mule; a shortening of the crop was the secondary consequence resulting from the first damage. He is allowed to recover for the first, but not for the second, because it is too remote and uncertain. The loss of the crop, though following the loss of the mule, was neither a necessary or natural consequence. The plaintiff might buy or hire another and finish his crop; and because he preferred to throw out a part of the crop, he is not thereby enabled to claim damage for the loss as an immediate and necessary consequence of the tort.
>
> "Suppose the court should apply a principle of equity and undertake to place the plaintiff as near as may be to his condition as it was before the tort? As far as the court could go to that end would be to allow him the cost of the hire of another animal until the crop was made, and then to pay him for the one he had lost. That, we think, should be the rule for damages in this case. Any-

thing beyond this would be too remote and conjectural, and would lead the courts into a boundless field of investigation."

In the instant case the loss of profits because of an inability to remove the logs, is a secondary consequence of the damage to the yarder. The direct and proximate cause of the loss was plaintiff's failure to procure other equipment, a consequence or cause remote from defendant's negligent act. Thus, plaintiff's loss of profits *as such* is not recoverable as a separate element of special damage flowing from defendant's negligence. Such losses may be considered, however, as evidence of the damage sustained to the property owner through a *loss of use* of the property during the period of repair.

When the owner of damaged property minimizes his losses by procuring a substitute or replacement during the period of repair he may generally recover the reasonable cost of the replacement or substitute as general damages to compensate him for his loss of use. *McCurdy v. Union Pac. R.R.*, supra; *Ackerman v. Tonkoff*, supra; cf. *Holmes v. Raffo*, 60 Wn.2d 421, 429, 374 P.2d 536 (1962). If, on the other hand, substitute or replacement property is unobtainable, there are Washington decisions which appear to countenance consideration of lost earnings or profits *as evidence* of the value of loss of use. In *Jellum v. Grays Harbor Fuel Co.*, 160 Wash. 585, 295 P. 939 (1931), defendant's driver negligently backed into plaintiff's truck, necessitating repair costs of $211.30, and causing 5 days' loss of use while repairs were accomplished. Plaintiff Jellum was unable to rent another truck, although he attempted to do so, and the court affirmed recovery of $120 for loss of use measured by his loss of net earnings of $24 per day. *Jellum* cites *Western Mach. Exch. v. Northern Pac. Ry.*, 142 Wash. 675, 254 P. 248 (1927), a case in which the defendant carrier negligently damaged plaintiff's railway crane during transport. A judgment of $300 for loss of use during the period of repair was affirmed. No mention is made of any effort to procure a substitute nor did the court in that decision explain how the $300 award was calculated. In the instant case it is

uncontroverted that plaintiff sought but was unable to obtain another yarder because of the demands of the Japanese market.

It is inconceivable to us that a plaintiff who is able to obtain a replacement for his damaged property may recover the reasonable cost of so doing—and possibly lose no profits—but that a plaintiff who is unable to do so, despite the exercise of due diligence, should have no recourse for a loss of use. Nor do we believe a realistic means of compensating him for that use would be to grant him what it would have cost for a replacement if one had been available. On the other hand, we are not prepared to hold that a loss of profits, income, or business, even if proven with the requisite degree of certainty, is the true measure of damages in all cases. Rather, we think the rule ought to be that proof of such a loss of profits, income, or business may be considered by the trier of fact *as evidence* of the value of the loss of use. Here, King Logging Company's proven loss of net profits was the only evidence offered which would tend to show or establish the value of plaintiff's loss of use, and recovery should have been allowed on that basis.

Although compelled to discuss at length both tort and contract theories of damage, we note in conclusion the result in this case should be the same whether relief is sought for breach of the carrier contract or for a specific act of negligence. Under either theory the loss, injury, or destruction of his property as the result of the carrier's default may deprive the owner of its use, an item for which he must be compensated.

That portion of the judgment granting plaintiff damages for repair costs is affirmed and that portion denying recovery for loss of use is reversed and the cause remanded for entry of judgment for plaintiff in the additional sum of $29,657.76.

PETRIE, C.J., and RUMMEL, J. Pro Tem., concur.

Petition for rehearing denied March 8, 1977.