[No. 29666. Department One. October 22, 1945.]

W. S. RAMSDEN, *Respondent*, v. WILLIAM GRIMSHAW *et al.*, *Appellants*.[1]

[1]Reported in 162 P. (2d) 901.

*Wright & Wright,* for appellants.

*Leon L. Wolfstone,* for respondent.

MALLERY, J.—The defendant operates an open-air parking lot, located on the corner of Fifth avenue and Stewart street in the city of Seattle. The north side of the lot is bounded by a tall building. At the west end of the lot there is an alley where a fence guards cars from dropping into the lot, but there is a driveway out. The south and east sides are bounded by sidewalks. Both are unfenced and will permit the exit of cars. There are driveway approaches leading into the parking lot from the east.

The parking lot was in charge of an attendant whose competency is admitted. The plaintiff paid twenty-five cents, received a claim check, and left his car with the keys in it to be parked by the attendant at about 7:30 p. m. He had parked there before.

The claim check had printed on it:

"We will not be responsible for loss or damage to car or contents from fire or theft, collision or any cause whatso-

ever. This is not a contract of bailment. We render a parking privilege only. We are not insurers and do not guarantee protection. We merely rent you space."

The attendant, following the known custom, parked the car and left the keys in it. This custom increases the capacity of the lot and adds to the convenience of the customer by permitting cars to be moved out of each other's way to leave the lot.

About 9:30 p. m., some two hours after the car was left, two sailors entered this parking lot while the attendant was parking another car about fifty feet to the west. The attendant observed them but had no idea at that time that they intended to steal a car. He testified that he thought that they had come onto the back of the lot to relieve themselves. As soon as he parked the car, he went down toward where these sailors had gone in the back part of the lot, and, observing them in the plaintiff's car and starting to drive the car out, he broke into a run and "hollered" at them to stop. He had approached to within eight or ten feet from them when the sailors drove the car out with "gears grinding, motor racing," and proceeded to run through a red light. They traveled about six miles at a high rate of speed, crashing into another car in the Ballard district. Both cars were wrecked. One of the sailors got away; the other was overtaken by the police who had been notified by the attendant immediately after the theft.

Plaintiff brought his action as bailor against a paid bailee for damages resulting from the negligence of the bailee. From a judgment in favor of the plaintiff, the defendant appeals.

■ As to the effect of the limitation of liability printed on the claim check, the rule is that one cannot contract away responsibility for one's own negligence or fraud. *Patterson v. Wenatchee Canning Co.,* 59 Wash. 556, 110 Pac. 379; *Sporsem v. First Nat. Bank of Poulsbo,* 133 Wash. 199, 233 Pac. 641, 40 A. L. R. 854 (also noted in 133 A. L. R. 298); *Baione v. Heavey,* 103 Pa. Super. Ct. 529, 158 Atl. 181; 6 Am. Jur. 350, § 270.

■ The rule on bailment for hire in such a case as the

instant one is that a *prima facie* case of negligence is made out when the bailee is unable to deliver the bailed article. But if the bailee shows the theft of the bailed article under circumstances that do not indicate the negligence of the bailee, the *prima facie* case fails, and the bailor must go forward with proof that the theft resulted from negligence, that is to say from the want of due care of the bailee. See 3 R. C. L. 151, § 74, cited in *Firestone Tire & Rubber Co. v. Pac. Transfer Co.,* 120 Wash. 665, 208 Pac. 55, 26 A. L. R. 217.

See, also, *Colburn v. Washington State Art Ass'n,* 80 Wash. 662, 141 Pac. 1153, L. R. A. 1915A, 594; *Goodwin v. Georgian Hotel Co.,* 197 Wash. 173, 84 P. (2d) 681, 119 A. L. R. 788; and *Rubinstein v. Washington Cold Storage Co.,* 18 Wn. (2d) 238, 138 P. (2d) 852.

"As applied to bailments, ordinary care means such care as ordinarily prudent men, as a class, would exercise in caring for their own property under like circumstances." 6 Am. Jur. 336, § 249.

See, also, *Sporsem v. First Nat. Bank of Poulsbo, supra.*

Touching upon the effect of custom upon the question of care, it is said in 6 Am. Jur. 282, § 187:

"Generally—Similar to the general rule permitting the parties to a bailment to vary their common-law rights and liabilities by a special contract is the apparently uniformly adopted principle that in the absence of an agreement to the contrary, *the usages of a particular business may be presumed to have entered into and formed a part of the contracts and understandings of persons engaged in such business and those who deal with them, and so such usages may also have the effect of enlarging or qualifying the liability of a bailee the same as a special contract.* Valid customs known to the contracting parties concerning the subject-matter of the agreement, or usages of which the parties are chargeable with knowledge, are, by implication, incorporated in the contract unless expressly or impliedly excluded by its terms." (Italics ours.)

■ Applying the rule to the facts of this case, the circumstances existing when the respondent left the parking lot were as follows: (1) The lot was unfenced with the obvious result that the exit of cars was not limited to a

main entrance; (2) the keys were left in the car to permit moving it. The respondent had the right to expect that the appellant would exercise the degree of care properly called for *by these circumstances* and would accordingly provide an adequate surveillance of the lot.

The specifications of negligence found by the court and relied upon by the respondent to sustain the judgment are that it was, negligence: (1) to leave the lot unfenced; (2) to leave the keys in the car; and (3) to have only one attendant upon the grounds; and furthermore, that these things constituted an invitation to the theft of the bailed article. The first two were circumstances existing and known to the respondent when he left the car. They bear upon the question of what care they made necessary but, being preexisting circumstances, are not negligence in themselves. As to the third, it appears that one attendant could keep the lot under surveillance. The attendant did keep it under surveillance. He saw the sailors come onto the lot. It is true that he mistook their purpose, but even an owner, in guarding his own property, would not be expected to anticipate a theft of a car from his very presence, since theft is ordinarily accomplished by stealth.

Granted that he failed in his attempt to frustrate the open theft of the car, it still does not follow that the effort was unreasonable, since in this case the method of theft was more characteristic of robbery (except for the absence of the threat of force and violence) than it was of theft by stealth. We think that an open theft from one's presence is not invited, and that the surveillance was such as would be reasonably given by an owner to his own goods.

The judgment is reversed with instructions to dismiss the action.

BEALS, C. J., MILLARD, STEINERT, and SIMPSON, JJ., concur.

---

November 17, 1945. Petition for rehearing denied.