[No. 36171.    Department One.    May 3, 1962.]

FRANK A. ALTHOFF, *Respondent,* v. SYSTEM GARAGES,
INCORPORATED, *Appellant.*\*

\*Reported in 371 P. (2d) 48.

*Karr, Tuttle, Campbell, Koch & Granberg (John F. Kruger,* of counsel), for appellant.

*Bianchi & Tobin,* for respondent.

ROSELLINI, J.—Damages resulting from the theft of the plaintiff's automobile from the defendant's parking garage, in Seattle, were sought in the instant action. The agreed statement of facts shows that the garage has an entrance on Sixth Avenue, another on Olive Street, and another on Seventh Avenue, which is the top parking level. There are a number of parking levels below this.

On the evening of December 19, 1959, the plaintiff left his 1958 Ford Thunderbird at the defendant's garage, where he had often parked before, and received a claim check. According to the custom of the place, he left the key in the ignition. There were three employees on duty during the evening, and the Seventh Avenue entrance was closed; however, persons on foot could enter the premises at that level and go to the various lower parking levels without being observed by the employees.

An intoxicated person was seen by the defendant's employee Lou Kranda at the garage at approximately 12:30 the following morning. He told Kranda that he was looking for his automobile which he had parked there. For several minutes they searched for the car, then the intoxicated man said that he remembered that he had parked his car elsewhere. Kranda escorted him to the Seventh Avenue exit and left him there on the sidewalk.

About an hour later, the same man returned and was seen by Kranda, who was parking an automobile at the time. He called to the man and went to look for him as soon as he had parked the car, but could not find him. He did not tell either of the other employees about these inci-

dents. Some fifteen to thirty minutes later, the plaintiff's automobile was driven out of the garage at the Olive Street entrance (which was not an exit) at a high rate of speed. All of the employees observed this happening and knew that no payment had been made for the parking of the vehicle, but they had no means of stopping it.

When the plaintiff returned to claim his automobile at approximately 2:38 a. m., it was discovered that it had been stolen. Later it was learned that it had been stolen by the intoxicated man, a sailor, who had driven it into a house in Marysville, severely wrecking it. He was killed in the accident.

This action followed and was tried to the court, which found in favor of the plaintiff. The defendant, appealing, contends that the court was not justified in finding that its employees were negligent. It is urged that the case is not distinguishable from the case of *Ramsden v. Grimshaw,* 23 Wn. (2d) 864, 162 P. (2d) 901, which involved the theft of an automobile from a parking lot. As in this case, the plaintiff, according to custom, left his key in the car. There was only one level in the parking lot, which was unfenced. There was but one attendant on duty. He observed two sailors come onto the lot and thought they were going to the back of the lot to relieve themselves. He was parking a car at the time, and as soon as he had finished doing this, he went down toward the area where they had gone. Observing them in the plaintiff's car and starting to drive the car out, he broke into a run and called to them to stop, but they drove out into the street at a high rate of speed. They traveled about six miles, then crashed into another car.

■ Speaking of the applicable rule of law, we said:

"The rule on bailment for hire in such a case as the instant one is that a *prima facie* case of negligence is made out when the bailee is unable to deliver the bailed article. But if the bailee shows the theft of the bailed article under circumstances that do not indicate the negligence of the bailee, the *prima facie* case fails, and the bailor must go forward with proof that the theft resulted from negligence, that is to say from the want of due care of the bailee."

■  We also observed that, as applied to bailments, ordinary care means such care as ordinarily prudent men, as a class, would exercise in caring for their own property under like circumstances. Also, the usages of a particular business may be presumed to have entered into and formed a part of the contracts and understandings of persons engaged in such business and those who deal with them, and so such usages may have the effect of enlarging or qualifying the liability of a bailee the same as a special contract.

Applying these rules to the facts of that case, we said:

" . . . the circumstances existing when the respondent left the parking lot were as follows: (1) The lot was unfenced with the obvious result that the exit of cars was not limited to a main entrance; (2) the keys were left in the car to permit moving it. The respondent had the right to expect that the appellant would exercise the degree of care properly called for *by these circumstances* and would accordingly provide an adequate surveillance of the lot.

"The specifications of negligence found by the court and relied upon by the respondent to sustain the judgment are that it was negligence: (1) to leave the lot unfenced; (2) to leave the keys in the car; and (3) to have only one attendant upon the grounds; and furthermore, that these things constituted an invitation to the theft of the bailed article. The first two were circumstances existing and known to the respondent when he left the car. They bear upon the question of what care they made necessary but, being preexisting circumstances, are not negligence in themselves. As to the third, it appears that one attendant could keep the lot under surveillance. The attendant did keep it under surveillance. He saw the sailors come onto the lot. It is true that he mistook their purpose, but even an owner, in guarding his own property, would not be expected to anticipate a theft of a car from his very presence, since theft is ordinarily accomplished by stealth."

It was the conclusion of this court that

" . . . an open theft from one's presence is not invited, and that the surveillance was such as would be reasonably given by an owner to his own goods."

Having found, as a matter of law, that the defendant was free of negligence, we reversed the judgment of the trial court.

■ We do not agree with the defendant that this case cannot be distinguished from *Ramsden v. Grimshaw, supra.* Granting that the fact that persons on foot could enter the garage from Seventh Avenue and the fact that keys were left in cars, were both known to the plaintiff and were not negligence in themselves, there remains the fact that the employees on duty on the night of the theft were not able to keep the premises under surveillance. In the *Ramsden* case, the one attendant was able to do so. This is a significant difference. The trial court in this case was justified in finding that the surveillance of the garage at night fell below the standard of reasonable care, and that, had all of the parking levels been kept under observation, the theft could have been prevented.

The defendant makes some argument that its liability should be limited to the sum of $250, because of the following words which appeared on the claim check:

"Company shall not be responsible for: Cars after closing time, Loss of Use of cars; Value of or damage to car, or liability to customer, exceeding $250.00."

■ It is conceded by the defendant that we have adopted the general rule (see 43 A. L. R. (2d) 419) that a professional bailee cannot contract away responsibility for his own negligence or fraud. It was so held in *Ramsden v. Grimshaw, supra.* But the defendant suggests that we should adopt a rule allowing a limitation of liability to a "reasonable amount." Inasmuch as there was no showing in this case that the words on the claim check were ever brought to the plaintiff's attention, and no showing that the amount to which the liability was limited was reasonable under the circumstances, we do not have before us facts which would justify a consideration of the question whether such a modification of the rule should be adopted.

The judgment is affirmed.

FINLEY, C. J., HILL, WEAVER, and FOSTER, JJ., concur.