Frank W. **BIRD** et al.

v.

S. S. **FORTUNA** et al.

S. S. **FORTUNA** et al.

v.

**WIGGIN TERMINALS, INC.,** et al.

**STEIN, HALL & CO.,** Inc.

v.

S. S. **FORTUNA** et al.

**NORTON LINE** et al.

v.

**WIGGIN TERMINALS, INC.,** et al.

Nos. 64–7, 64–10.

United States District Court
D. Massachusetts.

Dec. 29, 1966.

See also D.C., 232 F.Supp. 690; D.C., 250 F.Supp. 494.

John T. Bowes, Boston, Mass., for plaintiffs.

Leo F. Glynn, Boston, Mass., for Norton Line and Norton Lilly & Co., Inc.

Robert J. Hallisey, Bingham, Dana & Gould, Boston, Mass., for Massachusetts Port Authority.

John M. Reed, Withington, Cross, Park & McCann, Boston, Mass., for Wiggin Terminals, Inc.

Peter D. Cole, Boston, Mass., for S. Volpe & Co.

## MEMORANDUM

GARRITY, District Judge.

These are companion cases in admiralty brought by two consignees of a cargo of sisal shipped from Brazil on February 7, 1962 on the SS FORTUNA and discharged on February 21, 1962 at the Castle Island Terminal, Boston, Massachusetts, of which the defendant Wiggin Terminals, Inc. (hereinafter called Wiggin) is the lessee. The sisal was damaged by water and the plaintiffs sued the ship, her owners and operators (hereinafter referred to in the singular as Norton Line) and, in No. 64–7, Wiggin which was also named as a defendant in a cross-libel filed by Norton Line. In No. 64–10, Wiggin was not named in the libel but impleaded by Norton Line which alleges in both cases a breach of the contract for wharfage service which it made with Wiggin. Motions for summary judgment have been filed by Wiggin on the ground that a provision in its tariff then on file with the Federal Maritime Commission exempts it from liability. Wiggin moves alternatively for an order staying the proceedings until after the Federal Maritime Commission, as the tribunal having primary jurisdiction, has determined the validity and reasonableness of the exculpatory clause.

Wiggin's tariff provision was issued on August 15, 1960 pursuant to Federal Maritime Board Agreement No. 8365

dated and approved January 26, 1959. It states:

## 2—RESPONSIBILITY FOR LOSS OR DAMAGE

A—The terminal, its officers, agents, or employees shall not be responsible for loss or damage by whomsoever caused to vessels, merchandise, or any other property handled at or upon the pier or stored or parked thereon, either by fire, water, action of the elements, theft, or other cause.

B—The rates contained herein do not include insurance of any kind. Insurance must be procured by the interested party.

The claims against Wiggin originally sounded in tort for negligence as well as contract but the tort claims were eliminated from the cases because beyond the court's admiralty jurisdiction, by orders in No. 64–7 reported at D.C., 250 F.Supp. 494, after admiralty jurisdiction over the allegations in contract had been sustained by orders reported at D.C., 232 F.Supp. 690.

The key issue raised by Wiggin's motion is whether the court should grant summary judgment in its favor or refer the matter to the Federal Maritime Commission. The claimants against Wiggin have not argued the merits of either course but take the untenable position that Wiggin is a common carrier as well as a public wharf operator and that the exculpatory clause should be nullified as violative of § 3(8) of the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(8). They cite precedents such as Galveston Wharf Co. v. Galveston H. & S. A. Ry. Co., 1932, 285 U.S. 127, 52 S.Ct. 342, 76 L.Ed. 659, which hold that a public wharfinger *may* also be a common carrier. But the record in these proceedings is barren of the slightest evidence that Wiggin is a common carrier. None of the pleadings so indicates. An affidavit by one Gleason, pier superintendent for Wiggin at Castle Island, filed in connection with an earlier hearing as to jurisdiction in No. 64–7, demonstrates that it is not a common carrier.

In urging that summary judgment be granted without reference to the Commission, Wiggin relies principally on three contentions, all plausible but none persuasive. First, Wiggin contends that the omission from the Shipping Act, 1916, 46 U.S.C. §§ 801–842, which applies to wharf operators, of a ban on exculpatory clauses such as is contained in § 3(8) of the Carriage of Goods by Sea Act, 46 U.S.C. § 1303(8), shows a congressional intent to permit them. I do not agree, partly because the former statute was enacted 20 years before the latter and mainly because the details of a carrier's responsibilities are prescribed in the Carriage of Goods by Sea Act, whereas no details as to the operation of wharves are contained in the Shipping Act, 1916.

Wiggin also submits that the pertinent tariff provision must be deemed to have been approved by the Commission, as by the Civil Aeronautics Board in Lichten v. Eastern Air Lines, Inc., 2 Cir., 1951, 189 F.2d 939, 25 A.L.R.2d 1337. But there § 403(a) of the Civil Aeronautics Act of 1938 (now § 403(a) of the Federal Aviation Act of 1958, 49 U.S.C. § 1373(a)) required Eastern to file its tariff with the Board and provided that rejected tariffs should be void. Analogous provisions in the Shipping Act require Commission approval of tariffs established by carriers, 46 U.S.C. § 817, but not of tariffs of non-carriers such as wharf operators.

Thirdly, Wiggin points out correctly that the several claimants against it have had ample opportunity to complain to the Commission about the exculpatory clause which Wiggin issued in August 1960 and pleaded as a defense in these actions over a year ago. But the doctrine of primary jurisdiction is not subject to waiver and a court should invoke the doctrine, if applicable, on its own motion. Louisiana & A. Ry. Co. v. Export Drum Co., 5 Cir., 1966, 359 F.2d 311, 314.

E. B. Ackerman Importing Co. v. City of Los Angeles, 1964, 61 Cal.2d 595,

39 Cal.Rptr. 726, 394 P.2d 566, involved a tariff provision of a wharf operator very similar to the one here in question and likewise set up in defense against claims for damages. The Supreme Court of California, in bank, held that the Federal Maritime Commission had primary jurisdiction. I adopt the reasoning and interpretation of Southwestern Sugar & Molasses Co. v. River Terminals, 1958, 360 U.S. 411, 79 S.Ct. 1210, 3 L.Ed.2d 1334, in that opinion and find that the Commission has primary jurisdiction to determine the justification and reasonableness of the exculpatory clause in Wiggin's tariff.

An order, in the form filed with this memorandum, shall be entered staying these proceedings.