[No. 2234-1. Division One. April 21, 1975.]

HOLLISTER T. SPRAGUE, *Appellant*, v. SNUG HARBOR MARINA, INC., *et al, Respondents*.

*Rutherford, Kargianis & Austin* and *Don M. Gulliford*, for appellant.

*Detels, Draper & Marinkovich, Martin P. Detels, Jr., Williams, Strong, Thomson & Cole*, and *Curtis P. Thomson*, for respondents.

WILLIAMS, C.J.—Hollister T. Sprague brought this action against Snug Harbor Marina, Inc., and the community composed of Al Oakley and wife, to recover for damages for the loss of his houseboat, which capsized in Puget Sound. The cause was tried to the court, sitting without a jury, and resulted in a judgment of dismissal at the close of Sprague's case in chief. He appeals.

The essential facts are these: In October 1970, Sprague delivered his 43-foot houseboat, the *Whale II,* to Snug Harbor Marina, which is located in Eagle Harbor, on Bainbridge Island, for the purpose of selling it. On February 23, 1971, the *Whale II,* with Al Oakley, an employee of Snug Harbor as pilot, departed from Eagle Harbor bound for Edmonds. When the boat was off Point Wells, she took on water, capsized, and was lost except for nominal salvage.

In presenting his case, Sprague relied upon the rule of bailment that the unexplained failure of a bailee to return bailed goods is prima facie evidence of his breach of duty. *Chaloupka v. Cyr,* 63 Wn.2d 463, 387 P.2d 740 (1963); *Althoff v. System Garages, Inc.,* 59 Wn.2d 860, 371 P.2d 48 (1962). In addition to proof of delivery of the boat to Snug Harbor, Sprague introduced testimony that Oakley, while acting as an agent of Snug Harbor, was negligent in taking the boat into Puget Sound on February 23 because of prevailing bad weather. In this connection, a marine surveyor was called as an expert witness. He testified that it was imprudent for Oakley to venture out when small craft warnings were flying, as they were, and that the boat was lost due to weather conditions. The witness based his opinion on the official Coast Guard records, which showed that, at about the time of the rescue, the winds on Puget Sound were from 30 to 40 knots, and the seas were running from 5 to 6 feet.

For their part, Snug Harbor and the Oakleys relied upon the rule that the unexplained sinking of a vessel is prima facie proof of unseaworthiness. *Commercial Molasses Corp. v. New York Tank Barge Corp.,* 314 U.S. 104, 86 L. Ed. 89, 62 S. Ct. 156 (1941); *Kohlsaat v. Parkersburg & Marietta*

*Sand Co.*, 266 F. 283 (4th Cir. 1920). Snug Harbor and the Oakleys also developed information about the events of the trip from the cross-examination of Sprague's witnesses and from Oakley, who was called as an adverse witness by Sprague. Sprague and a companion, both of whom had sailed on the boat in Canadian waters, gave evidence that she had experienced seas from 6 to 10 feet without difficulty, although it was pointed out that in those waters the waves were less choppy than in Puget Sound. Sprague testified that he would not hesitate to take the boat out in 6-foot waves, if the sea conditions were the same as he had experienced in Canada.

There was also evidence that, while in Canada, a crack of some 8 feet had been discovered in the hull near the stern. This was repaired by a shipwright, who would not guarantee the result. The marine surveyor testified that the bilge keels, consisting of plywood boxes fiberglassed over, were unsatisfactory. He also said that he would not recommend purchase of the vessel for use on the waters of Puget Sound.

Oakley testified that, shortly before capsizing, the boat had filled with water in the stern. The evidence is conflicting as to how the water got in. The marine surveyor said that it could have come through the engine hatch, which was located in the stern; Oakley said that the hatch was weatherproof, the boat was fully enclosed aft, and there was "no place for water to come inside."

In bailment, the rule is that if an object is delivered in good condition and returned in bad condition, there arises a presumption of negligence which casts upon the bailee the burden of showing that it has used reasonable care and caution. *Kingsley v. Standard Lumber Co.*, 84 Wash. 189, 146 P. 369 (1915). This rule applies to a craft sailed upon Puget Sound, *Parker v. Washington Tug & Barge Co.*, 85 Wash. 575, 148 P. 896 (1915), and is a part of the maritime law of the United States. *Commercial Molasses Corp. v. New York Tank Barge Corp.*, *supra*. There it was said at page 112:

Proof of the sinking of the barge aided petitioner, but did not relieve it from sustaining the burden of persuasion when all the evidence was in. This Court, in the case of private bailments, has given like effect to the rule that the unexplained failure of the bailee to return the bailed goods is prima facie evidence of his breach of duty, . . . and the lower federal courts have applied, correctly we think, the same rule with respect to proof of unseaworthiness by the shipper where the vessel has not assumed the obligation of a common carrier. . . . This is but a particular application of the doctrine of *res ipsa loquitur,* which similarly is an aid to the plaintiff in sustaining the burden of proving breach of the duty of due care but does not avoid the requirement that upon the whole case he must prove the breach by the preponderance of evidence.

(Citations omitted.)

 The trial judge found that the evidence did not show negligence on the part of Snug Harbor and the Oakleys. There is no evidence, other than the opinion of the marine surveyor, that the weather conditions caused the stern of the *Whale II* to fill with water. There is evidence that the unseaworthiness of the boat caused her loss, and the doctrine of seaworthiness renders the owner of an unseaworthy boat absolutely responsible for damages resulting from such condition. *Vogel v. Alaska S.S. Co.,* 69 Wn.2d 497, 419 P.2d 141 (1966).

 Sprague's reliance upon the inference to be drawn from the unexplained loss of the boat to sustain his burden of proving negligence is misplaced because

if the bailee does go forward with evidence enough to raise doubts as to the validity of the inference, which the trier of fact is unable to resolve, the bailor does not sustain the burden of persuasion which upon the whole evidence remains upon him, where it rested at the start.

*Commercial Molasses Corp. v. New York Tank Barge Corp., supra* at 111. The undisputed facts show that the *Whale II* was taken out in stormy weather, the stern filled with water, and she capsized. The disputed facts show either that the water came in through the engine hatch, through

an opening in the hull, or by some other means. The court found that the vessel took on water through no fault of Snug Harbor or the Oakleys. There is substantial evidence to support this position, and it will not be disturbed on appeal.

The judgment of dismissal is affirmed.

FARRIS and CALLOW, JJ., concur.

Petition for rehearing denied May 27, 1975.

Review denied by Supreme Court July 29, 1975.