[No. 2305-2. Division Two. December 13, 1977.]

S. S. KRESGE COMPANY, *Respondent,* v. THE PORT OF LONGVIEW, *Appellant,* LAWRENCE B. RICE, ET AL, *Respondents.*

*Charles R. Cusack, Jr.,* for appellant.

*Judson T. Klingberg,* for respondents.

PEARSON, C.J.—The Port of Longview appeals from a directed verdict in favor of S. S. Kresge Company in Kresge's tort action based on the collapse of the roof of the Port's warehouse and resulting damage to goods consigned to Kresge. The major issue concerning liability is whether the Superior Court erred in applying the vicarious liability of a possessor of land for construction work by an independent contractor, as expressed in section 422 of the Restatement (Second) of Torts (1965), or whether the court should have allowed the jury to apply the common–law principles of negligence to conduct of a "warehouseman" under RCW 62A.7–204. A threshold issue is whether the court should have stayed the trial until, under the doctrine of "primary jurisdiction," the Federal Maritime Commission was given the opportunity to decide the validity of certain exculpatory clauses in a tariff the Port had filed with the F.M.C. We believe the court correctly refused to recognize primary jurisdiction in the F.M.C., but we reverse the judgment on the grounds it was improper to impose strict, vicarious liability on the Port, in disregard of common–law principles of negligence.

In 1965, the Port hired Gilnett Construction Company to build its Warehouse No. 1 at the Port's dock facility on the Columbia River. The contract specifications called for laminated beams and purlins that were engineered and designed by Dick W. Ebeling, Inc., a structural engineering firm located in Portland, Oregon. The beams and purlins were fabricated by Trussfab, Inc., who sold them to Gilnett for installation in the warehouse roof. The original specifications provided for a standard construction method in which each purlin[1] would be fitted between two beams by

[1]A purlin is a member laid horizontally between principal rafter beams to support the common rafters, or roof decking.

bolting it at each end into a steel hanger, or saddle, fastened to the beam. The Port wanted to accommodate special ceiling lighting, however, and it approved, for that purpose, certain of its architect's changes in the plans.

The purlins became sawed timbers rather than laminated, and the hangers were omitted and replaced by a method of toenailing the purlins to the top of the beams. There was evidence that the change in the method of securing the purlins was contrary to accepted design and standard practice, and that it was the most important factor in the collapse of the roof in 1973. Damage to Kresge's merchandise being stored in the warehouse was in the stipulated amount of $34,561.

Kresge sued the Port, Gilnett Construction Company, the architect for the building, and the designer and manufacturer of the beams and purlins. Summary judgments of dismissal on statute of limitations grounds were granted as to the latter three parties, and the contractor was also awarded summary judgment because it had constructed the building—including the installation of the purlins that failed—as instructed by the Port's architect.

The Port vigorously pursues the affirmative defense that it had filed a tariff with both the Federal Maritime Commission and the Washington Utilities and Transportation Commission. The tariff, published as a notice to shippers, provided in part:

> *Use of Terminals, Deemed Acceptance.* Use of wharves or facilities shall be deemed an acceptance of this tariff and the terms and conditions named herein.
> *Liability for Loss or Damage Limited.* The terminals will not be responsible for any loss or damage caused by . . . collapse of buildings or structures; . . .

Because the Federal Maritime Commission is charged with "primary jurisdiction and responsibility" to enforce compliance with 46 U.S.C. § 801 *et seq.* (the Shipping Act of 1916), *Federal Maritime Comm'n v. New York Terminal*

*Conference,* 262 F. Supp. 225, 228 (S.D.N.Y. 1966), the Port contends the Superior Court had no jurisdiction to proceed with the action until the F.M.C. was able to decide the validity of the tariff provision purporting to exculpate the Port for liability for the roof's collapse.

 The function of the primary jurisdiction doctrine is to guide a court in determining whether it should refrain from exercising its jurisdiction until an administrative agency has resolved an issue arising in the proceeding before the court. The doctrine governs whether the court, or an agency with special competence concerning the particular issue, will initially decide the issue. The court may postpone its own action pending the agency's determination, or it may dismiss the case before it and defer entirely to the agency's expertise. If the court retains jurisdiction, it can set aside or modify the agency action based on its own interpretation of questions of law. K. Davis, *Administrative Law Text* §§ 19.01, 19.06 (3d ed. 1972); *see also* Annot., 38 L. Ed. 2d 796 (1974). In Washington, the application of the doctrine is within the sound discretion of the court. *Kerr v. Department of Game,* 14 Wn. App. 427, 542 P.2d 467 (1975).

The Port urges that the F.M.C. should be able to determine if the tariff's exculpatory language can relieve the Port of liability. In our state, however, any attempt by a bailee for mutual benefit to disclaim or limit liability for its own negligence contravenes public policy and will not be enforced. *Althoff v. System Garages, Inc.,* 59 Wn.2d 860, 371 P.2d 48 (1962); *King Logging Co. v. Scalzo,* 16 Wn. App. 918, 561 P.2d 206 (1977). This rule is also found in the federal courts. For example, in applying the rule to the context of maritime towing, the Supreme Court has announced that

[t]he two main reasons for the creation and application of the rule have been (1) to discourage negligence by making wrongdoers pay damages, and (2) to protect those in need of goods or services from being overreached by others who have power to drive hard bargains.

(Footnote omitted.) *Bisso v. Inland Waterways Corp.*, 349 U.S. 85, 91, 99 L. Ed. 911, 918, 75 S. Ct. 629 (1955); *accord, Dixilyn Drilling Corp. v. Crescent Towing & Salvage Co.*, 372 U.S. 697, 10 L. Ed. 2d 78, 83 S. Ct. 967 (1963); *Dow Chem. Co. v. M/V Charles F. Detmar, Jr.*, 545 F.2d 1091 (7th Cir. 1976).

We realize that some courts have deferred to the primary jurisdiction of the F.M.C. to interpret exculpatory tariff provisions because the public policy considerations that might lead courts to invalidate private contractual arrangements are not necessarily applicable to provisions in a tariff, inasmuch as the rates in the tariff may be computed on the understanding that the exculpatory provisions have relieved the regulated party of the expense of obtaining liability insurance for the acts of its agents and employees. *E.g., Southwestern Sugar & Molasses Co. v. River Terminals Corp.*, 360 U.S. 411, 3 L. Ed. 2d 1334, 79 S. Ct. 1210 (1959); *Bird v. S.S. Fortuna*, 262 F. Supp. 24 (D. Mass. 1966); *E.B. Ackerman Importing Co. v. Los Angeles*, 61 Cal. 2d 595, 394 P.2d 566, 39 Cal. Rptr. 726 (1964). But this line of cases also recognizes that the validity of tariff exculpatory clauses on public policy grounds must ultimately be resolved by the courts.

We hold the trial court did not abuse its discretion in declining to apply the primary jurisdiction doctrine in this case. The public policy of this state is too firmly established to the effect that a professional bailee cannot disclaim or limit liability for its own negligence. *Althoff v. System Garages, Inc., supra; King Logging Co. v. Scalzo, supra.* It would therefore be a futile exercise for the F.M.C. to give its own interpretation of the exculpatory clause in the Port's tariff. In addition, we agree with the view that an administrative agency should not be accorded primary jurisdiction if the agency is powerless to grant the relief requested. *See* B. Schwartz, *Administrative Law* § 169 (1976). Such is the case here, where the F.M.C. could not award a judgment against the Port even if it found the tariff did not relieve the Port of liability.

In reviewing the propriety of the directed verdict granted to Kresge, we should first compare section 422 of the Restatement (Second) of Torts, relied on by the court, with the terms of RCW 62A.7–204. The Restatement expresses a policy of strict, vicarious liability, as follows:

§ 422. Work on Buildings and Other Structures on Land
A possessor of land who entrusts to an independent contractor construction, repair, or other work on the land, or on a building or other structure upon it, is subject to the same liability as though he had retained the work in his own hands to others on or outside of the land for physical harm caused to them by the unsafe condition of the structure
(a) while the possessor has retained possession of the land during the progress of the work, or
(b) after he has resumed possession of the land upon its completion.

The statute, on the other hand, contains a statement of ordinary duty of care:

62A.7–204 Duty of care; contractual limitation of warehouseman's liability. (1) A warehouseman is liable for damages for loss of or injury to the goods caused by his failure to exercise such care in regard to them as a reasonably careful man would exercise under like circumstances but unless otherwise agreed he is not liable for damages which could not have been avoided by the exercise of such care.

■ RCW 62A.7–204 codifies the common–law rule of negligence that a warehouseman bailee of goods must exercise due care to safeguard them against damage. *Moe v. American Ice & Cold Storage Co.,* 30 Wn.2d 51, 190 P.2d 755 (1948). The provisions of the Uniform Commercial Code do not totally preempt the fields of law in which they speak. Rather, they are supplemented by all principles of law and equity not specifically displaced by them. RCW 62A.1–103; *see Gorge Lumber Co. v. Brazier Lumber Co.,* 6 Wn. App. 327, 493 P.2d 782 (1972).

Additional legal principles worthy of note in this case are the common–law rules pertaining to bailment for mutual benefit, as expressed in *Chaloupka v. Cyr,* 63 Wn.2d 463,

387 P.2d 740 (1963): When property is delivered to a bailee in good condition and is lost or damaged while in the bailee's possession, there arises a presumption of negligence. The presumption is rebutted upon the bailee's showing of his due care, and the burden is then upon the bailor to establish the bailee's negligence by a preponderance of the evidence. *See also Sprague v. Snug Harbor Marina, Inc.,* 13 Wn. App. 246, 534 P.2d 583 (1975).

■ Under section 422 of the Restatement (Second) of Torts, a possessor of land who hires an independent contractor to build or do other work on a building upon it, is held responsible for the independent contractor's negligence regardless of his own exercise of reasonable care.[2] It is clear that the rule is intended to apply to acts of an architect or a builder, when the functions of each are reposed in different contractors. Restatement (Second) of Torts § 422, comment *d.* The rationale for the rule is that the land possessor is the one primarily benefited by the contractor's work; he is in a position to select one who is financially responsible and can indemnify him; he can make the expense of liability insurance a cost of doing business; and because care in such work is important to the public. *Pappas v. Carson,* 50 Cal. App. 3d 261, 123 Cal. Rptr. 343 (1975); *see* W. Prosser, *Law of Torts* § 71 (4th ed. 1971). We have not completely adopted the Second Restatement rule, however. In Washington, vicarious liability for the acts of an independent contractor—and, indeed, for the acts of an "employee" or "agent," however labeled—"arises only where one engaging another to achieve a result controls or has the right to control the details of the latter's physical movements." *Jackson v. Standard Oil Co.,* 8 Wn. App. 83,

[2]The official comment to section 422 of the Restatement (Second) of Torts (1965) uses this illustration:

"A, the owner of the land, employs an independent contractor to construct a building on the land. The building is completed, and A resumes possession of the premises. Thereafter an awning negligently installed by the contractor above a window falls into the public street, injuring B, a pedestrian. A is subject to liability to B."

91, 505 P.2d 139 (1972), quoting from *McLean v. St. Regis Paper Co.*, 6 Wn. App. 727, 732, 496 P.2d 571 (1972).[3] Thus, the liability in common–law negligence imposed upon the Port of Longview as a bailee, as codified in RCW 62A.7–204, is supplemented only to the extent the Port will be held liable for the acts of an independent contractor whom it had a right to control. Usually the question of control or right to control is a question of fact for the jury. *Jackson v. Standard Oil Co., supra.*

█ In our review of the order directing a verdict, we must consider the evidence in a light most favorable to the nonmoving party, the Port of Longview. Such an order will be upheld only when, as a matter of law, there is no competent evidence, nor reasonable inferences arising therefrom, which would sustain a jury verdict in favor of the nonmoving party. *Shelby v. Keck*, 85 Wn.2d 911, 541 P.2d 365 (1975).

Several parties were involved in the design and construction of the warehouse and particularly the purlins. At trial, two civil engineers were called as expert witnesses. The evidence was that the laminated beams had been properly designed and manufactured, and that the builder had erected the warehouse according to the architect's instructions. There was, therefore, no basis for imposing liability on the contractor, and he was properly dismissed from the action. *Clark v. Fowler*, 58 Wn.2d 435, 363 P.2d 812 (1961). As for the architect, although he may be described as the Port's agent in supervising the construction of the warehouse to assure it conforms to his plans, *Clark v. Fowler, supra;* 5 Am. Jur. 2d *Architects* § 6 (1962), in preparing those plans and specifications he is, as a matter of law, an independent contractor whose actions are beyond the client's ability to control. *McLean v. St. Regis Paper Co.,*

[3]Section 416, one of the Restatement (Second) of Torts sections pertaining to nondelegable duties, may provide an additional theory of liability where the damage occurs during the progress of the work of an independent contractor. *See Jackson v. Standard Oil Co.*, 8 Wn. App. 83, 505 P.2d 139 (1972). Such rule is not applicable to this case.

*supra* at 730; *Burke v. Ireland,* 166 N.Y. 305, 50 N.E. 914 (1901); *Mackay v. Benjamin Franklin Realty & Holding Co.,* 288 Pa. 207, 135 A. 613 (1927). Therefore we hold it was error to rely upon section 422 of the Second Restatement in order to impose liability against the Port for the architect's actions; the principles of strict liability are patently inconsistent with the common law applicable to a bailee in the Port's situation, as provided in RCW 62A.7–204 and *Chaloupka v. Cyr, supra.* This conclusion does not end our inquiry, however; the directed verdict can be affirmed if the record contains sufficient evidence to support it under ordinary rules of negligence.

The experts assigned several factors as contributing to the collapse of the roof. The most important, as we have noted, was the manner in which the purlins had been attached to the roof, pursuant to the change in design. Among additional factors, the building had gradually subsided—or settled—at one end, and a metal column supporting the roof had been knocked slightly out of alignment by collisions with warehouse equipment such as forklifts. The experts disagreed on whether the Port's allowing rainwater to accumulate on the roof was a contributing factor.

We believe the evidence presented certain questions on which reasonable minds might differ that should be left to the determination of the jury. Inasmuch as the issue is that of the Port's exercise of due care, and there was evidence the roof failure was due in part to standing water and a subsidence of the building, it was the province of the jury to decide whether the Port failed in its reasonable duty to notice and correct the subsidence of the building or to provide better drainage for the roof. Additionally, there is a jury question whether the Port should be held liable for the collapse because of a combination of factors perhaps within its knowledge and control, including but not limited to the standing water, the building's subsidence, and the forklift

collisions with the supporting column. Such issues of negligence should be submitted to the jury by instructions consistent with the presumption of negligence and related discussion in *Chaloupka v. Cyr, supra* at 465–68.

Even though the Port prompted and approved the architect's redesign of the manner of attaching the purlins to the beams, no evidence was produced to show the Port acted unreasonably in relying upon the architect's expertise in making the change. Accordingly, absent testimony that the Port was aware, or in the exercise of reasonable care should have been aware, of the deficiency in the redesign, there is no issue for the jury as to the liability of the Port because of such design deficiency.

■ A final issue is the court's award of $1,250 to Dick W. Ebeling, Inc., as attorney's fees incurred in obtaining a summary judgment of dismissal. The attorney's fees were awarded to Ebeling pursuant to RCW 4.28.185(5), our long–arm statute, which provides, in part:

> (5) In the event the defendant is personally served outside the state . . ., and prevails in the action, there may be taxed and allowed . . . as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

As Kresge concedes in its cross–appeal of this award, the award of attorney's fees under the statute is discretionary. There is no abuse of discretion if the action was frivolous, or if the burdens upon a defendant outweigh the conveniences to him, and the severity of the burdens is such as to offend the traditional notions of fair play and substantial justice. *State v. O'Connell,* 84 Wn.2d 602, 528 P.2d 988 (1974). The action does not appear to have been frivolous; but the record fails to establish that Ebeling was not unduly burdened, and the award of attorney's fees was not, therefore, an abuse of discretion.

Reversed and remanded for a new trial on the issue of the Port's liability for the stipulated damages.

PETRIE and REED, JJ., concur.

Petition for rehearing denied January 11, 1978.

Review granted by Supreme Court May 19, 1978.